## JOHN MARTIN v. S. H. WADE, JOSEPH S. WADE, AND D. O. McCARTHY.

AGREEMENT AGAINST PUBLIC POLICY.—An agreement by which a candidate for office receives from another person money to aid him in securing his election, and in consideration thereof agrees to share with such other person a portion of the proceeds and emoluments of the office when elected, is immoral, against public policy, and *malum in se*, and is totally void.

ACTION ON CONTRACT AGAINST PUBLIC POLICY.—Whether a contract against public policy be executory or executed, no action can be brought, either on the contract, or to recover back the consideration, or to recover judgment on a promissory note made in consideration of a cancellation of such contract.

CONTRACT AGAINST PUBLIC POLICY CANNOT BE RESCINDED.—There can be no rescission of a contract against public policy. Such contract is void at its inception, and there is nothing to rescind.

CONTRACTS *Malum Prohibitum.*—There is a distinction between contracts which are *malum in se* and those which are merely *malum prohibitum.* In certain cases, remedies are afforded to one of the parties in the latter class of contracts.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

This was an action brought on the following promissory note:

"$710 00.   San Francisco, August 5th, 1867.—Sixty days after date, without grace, I promise to pay to Austin Wiley, or order, the sum of seven hundred and ten dollars, payable only in gold coin of the Government of the United States, for value received, with interest thereon, in like gold coin, at the rate of one and a half per cent per month from October 6th, 1867, until paid.          D. O. McCARTHY."

The plaintiff averred in the complaint that the defendants indorsed the note at the time it was made, and delivered it to the payee, Wiley, who, before its maturity, indorsed and delivered it to the plaintiff.

The defendants, S. H. and J. S. Wade, filed the following answer:

"The defendants S. H. and Joseph S. Wade, for separate answer to the complaint of the plaintiff herein, aver that,

prior to the execution of the note in the complaint herein named, the maker of said note, D. O. McCarthy, was a candidate upon the ticket commonly known and called the Union State Ticket for election by the people of the State of California, at the general election of the year 1867 to the office of State Printer of said State; and upon information and belief, defendants aver that while said McCarthy was so a candidate, and prior to said election and the making and delivery of said note, said McCarthy agreed with Austin Wiley, the payee in said note named, that in consideration of said Wiley advancing said McCarthy the sum of sixteen hundred dollars, to be used in and about securing the election of said McCarthy, and in consideration of said Wiley exerting his personal and political influence to secure the election of said McCarthy at the election and to the office aforesaid, in the event of his (McCarthy's) election to said office as aforesaid, he, said McCarthy, would give him, Wiley, a certain interest in the profits and emoluments of said office of State Printer, the precise extent of which is unknown to these defendants, and therefore cannot state the same; that in consideration thereof, and in pursuance of said agreement, said Wiley did thereafter advance part of said sum of sixteen hundred dollars to said McCarthy, to wit: about the sum of seven hundred dollars, as these defendants are informed and verily believe, and did use and exert his personal and political influence to secure the election of said McCarty to said office, as aforesaid.

"That afterward, to wit: after the said Wiley had so advanced said sum of seven hundred dollars, said Wiley became and was doubtful of the election of said McCarthy as aforesaid, and in consequence declined to advance said McCarthy any further sum or sums of money, according to the terms of said agreement, or otherwise; that thereupon said McCarthy again became and was in need of money to secure his election, as aforesaid, and in order to procure the necessary sums for the purposes aforesaid, said McCarthy

agreed with the defendants that, in consideration that they would advance him the sum of one thousand dollars ($1,000) in gold coin, for the purpose of securing his election as aforesaid, he, said McCarthy, would, in the event of his election as aforesaid, give these defendants a certain interest in the profits and emoluments of said office of State Printer, to wit: one third interest in the profits and emoluments of said office, these defendants thereafter further paying said McCarthy out of said one third interest in the profits and emoluments of said office nine thousand dollars in gold coin, in equal yearly installments during the tenure of said office; that thereafter, and in consideration of said agreement, these defendants advanced to said McCarthy, in money, and in labor and services and materials agreed to be taken in discharge of said sum of one thousand dollars, the aggregate sum of thirteen hundred and twenty-two dollars and eighty-four cents in United States gold coin; and upon information and belief defendants aver that in order to induce said Wiley to cancel his said agreement, and in satisfaction of the sums of money by him advanced, as aforesaid, to said McCarthy, said McCarthy made, executed, and delivered to said Wiley the note in the complaint mentioned, and caused these defendants to indorse the same; that there was no other or different consideration for said note or the indorsement thereof. And these defendants are advised and verily believe that all and singular the matters aforesaid were and are contrary to public policy and void, and they allege the fact so to be.

"And upon information and belief, defendants further aver that the plaintiff herein had notice of all and singular of the premises prior to and at the time said note in the complaint alleged was transferred and indorsed to plaintiff; and upon like information and belief, these defendants deny that said note was indorsed or transferred by the payee thereof prior to maturity. or for a valuable consideration, or in good faith; and upon like information and belief, they allege that said plaintiff did not advance or pay or part with

any matter or thing of value in consideration of the indorsement of said note to plaintiff.

" Wherefore, they pray to be hence dismissed, without day, with costs."

The plaintiff demurred to the answer, and the Court sustained the demurrer. The defendants declined to amend, and jugment by default was rendered for the plaintiff. The defendants, the Wades, appealed.

*T. I. Bergin*, for Appellants.

The corrupting and pernicious influences of the arrangements detailed in the answer are only too lamentably obvious in the politics of the day. It is unnecessary to particularize. Their tendency is in subversion of the essential and fundamental theory of the Government, and as such Courts treat them whenever presented for adjudication. Illustrations of the principles upon which Courts act in such cases abound. Thus, an action will not lie for printing an immoral or libelous work. (*Poplett* v. *Stockdale*, Ryan & M. 337, 2 E. C. 2; *Fores* v. *Jones*, 4 Esp. 97; *Stockdale* v. *Onwhyn*, 5 Bar. & Cr. 173; *Walcott* v. *Walker*, 7 Ves. 1.) So, recovery cannot be had for supplying clothing or lodgings to a prostitute for the purpose of enabling her to ply her vocation. (*Guardy* v. *Richardson*, 1 Esp. 13; *Jennings* v. *Throckmorton*, Ry. & M. 251, 21 E. C. 2; *Bonny* v. *Bennett*, 1 Camp. 348; *Smith* v. *White*, Law Reports, 1 Excheq. 625; *Pearce* v. *Brooks*, Law Reports, 1 Excheq.) So, contracts in restraint of marriage. (*Low* v. *Peers*, Burr. 2,225, 2,234.) So, a bond conditioned to marry. (*Baker* v. *White*, 2 Vern. 215.) So, a deed tending to future separation of husband and wife is void. (*Hendly* v. *Westmeath*, B. & C. 206, 13 E. C. 2.) So, *marriage brocage* bonds are void. (*Hall* v. *Potter*, 3 Levinz, 411; *Cole* v. *Gibbons*, 1 Ves. 503; *Roberts* v. *Roberts*, 3 P. Williams, 74.) So, contracts to obstruct the course of justice. (*Collins* v. *Blantern*, 2 Wils. 341; S. C., with notes in

Smith L. C.; *Valentine* v. *Stewart*, 15 Cal. 387.)    Action will not lie upon contract to obtain appointment to an office. (*Lewis* v. *Knox*, 2 Bibb, 453; *Carlton* v. *Whicher*, 5 N. H. 196; *Proprietors, etc.* v. *Page*, 6 N. H. 183.)    Or to procure election of a candidate to an office. (*Nichols* v. *Mudgett*, 32 Verm. 546.)    Or to procure or defeat the passage of a bill by the Legislature. (*Clippenger* v. *Hepbaugh*, 5 Watts & Serg. 315.)    Or to use influence to procure a pardon. (*Hatzfield* v. *Guldman*, 7 Watts, 152.)    Or to withdraw an election petition. (*Coppock* v. *Bower*, 4 M. & Wels. 361; *Thomas* v. *Edwards*, 2 M. & Wels. 218.)    So agreements for public favor. (*Parson* v. *Thompson*, 1 H. Black. 323; *Harrington* v. *Du Chattel*, 1 Brown Ch. 125.)    So in regard to wagers on the acquittal or discharge of a prisoner, (*Evans* v. *Jones*, 6 Mees. & Wels. 77;) on the result of a prize fight, (*Hunt* v. *Bell*, 1 Bing. 1;) as to whether an unmarried woman would have a child by a certain day, (*Ditchnon* v. *Goldsmith*, 4 Campb. 136;) as to the sex of a third person, (*Da Costa* v. *Jones*, Cowp. 729;) as to the life of a human being, (*Phillips* v. *Jones*, 1 Raw. 37;) as to future amount of the public revenue, (*Atherfold* v. *Beard*, 2 T. R. 610.)    So, wagers upon elections are void. (*Allen* v. *Hearn*, 1 T. R. 56; *Ball* v. *Gilbert*, 12 Metc. 397; *Rust* v. *Gott*, 9 Cow. 169; *Lloyd* v. *Lessening*, 7 Watts, 343; *Wheeler* v. *Spencer*, 13 Conn. 28; *Wagonseller* v. *Snyder*, 7 Watts, 343; *Lavul* v. *Mayers*, 1 Bail. 486; *Smith* v. *McMasters*, 2 Browne, 182; *McAllister* v. *Hoffman*, 16 Serg. & R. 147.)    That money advanced to another for the purpose of violating the law or public policy cannot be recovered. (*Morgan* v. *Groff*, 5 Den. 365; *Perkins* v. *Savage*, 15 Wend. 412; *Gas Light and Coke Co.* v. *Turner*, 5 Bing., N. C., 666; *De Bagnis* v. *Armstead*, 10 Bing. 107; *Cannan* v. *Brice*, 3 B. & Ald. 179; *McKennett* v. *Robinson*, 3 Mees. & Wels. 435; *Langton* v. *Hughes*, 1 M. & Selw. 593.)    As to actions in our own Courts, where recovery was refused on the ground of public policy. (*Spence* v. *Harvey*, 22 Cal. 336; *Swan* v. *Chorpenning*, 20 Cal. 182; *Valentine* v. *Stewart*, 15 Cal. 397; *Abbe* v. *Marr*, 14 Cal. 210; *Gregory* v. *Haworth*, 25

Cal. 653; *Davis* v. *Mitchell*, 34 Cal. 81. See, also, *Tool Co.* v. *Norris*, 2 Wall, N. S., 46; *Marshall* v. *Baltimore & O. R. R. Co.*, 16 How., N. S., 314; *Fuller* v. *Dame*, 18 Pick. 472.)

Upon the necessity of purity in elections it is unnecessary to enlarge, as many of the preceding authorities present its importance in clear and forcible language. (See, also, Const. of Cal., Art. XI, Sec. 18.)

The mere promissory notes do not close the transaction, or purge it of its illegality, so as to preclude the application of the rule. The money has not been paid; the notes are mere promises to pay, leaving it still executory. (*Nellis* v. *Clark*, 20 Wend. 26; *Brown* v. *Tarkington*, 1 Wall., U. S., 381. See general rules laid down in Story's Eq. Jur., Sec. 298, *et seq.*)

*Walter Van Dyke*, for Respondent.

According to the view of respondent, the argument of appellants' counsel has no relevancy whatever to the case. The arrangement between Wiley and McCarthy, as set forth in the answer, was by the parties thereto mutually rescinded before performance. It is, therefore, not material to consider whether it was void as against public policy or otherwise, as it is not sought to carry out that undertaking, or to recover under it. This action is to recover on a note, the consideration of which is money in the hands of McCarthy, the maker, belonging to Wiley, the payee, and has nothing to do with the first undertaking, which, whether valid or not, had no existence when this was entered into. Both parties, of course, can rescind any contract and agree that money paid under it shall be returned. But in case of a contract void as against public policy, as claimed here by the defendants, one of the parties to it may rescind at any time before performance, and recover back any money advanced under it. (2 Parsons on Con. 253; Chitty on Con. 553; 2 Comyns on Con. 109; *White* v. *Franklin Bank*, 22 Pick. 189; *Utica Ins. Co.* v. *Kip*, 8

Cow. 20; *Mount* v. *Stokes*, 4 T. R. 561; *Lowry* v. *Bourdieu*, 2 Doug. 470.)

Money paid or deposited on an illegal contract or wager may be recovered back as money had and received, by repudiating the contract or wager before performance or the event of the wager is ascertained. (Chitty on Con. 538–540, and cases cited.)

By the Court, RHODES, J. :

That the agreement between Wiley and McCarthy, as stated in the answer, was in violation of the general law of public policy, immoral, and *malum in se*, and, therefore, wholly void, there can be no reasonable doubt. Contracts by which parties agree to bestow their money and services to secure the election of candidates for public office, and the candidates, in consideration thereof, agree, if elected, to share with such parties the profits and income of their offices, corrupt and poison the very source of political power in republican governments.

There is a marked distinction between contracts which are *malum in se*, and those which are merely *malum prohibitum*, and it is recognized in all the cases involving questions growing out of illegal contracts. Remedies are, in certain classes of cases, afforded to one of the parties to contracts of the latter character, while they are always refused to either party to the former. The principle that parties to a contract *malum in se*, whether it be executory or executed, whether the action be brought on the contract or to recover the consideration, are denied all remedy by the Courts, is clearly and firmly established by a series of decisions almost unbroken, extending from the early history of the common law, down to the present time. There is no rule of law placed more completely beyond controversy than this. It is to such contracts especially that the maxim, *Ex turpi causa non oritur actis* has application, and also the kindred maxim, *In pari delictu potior est conditio defendentis.* In contracts which

contemplate the performance of some act which involves moral turpitude or violates the general principles of public policy—or, generally stated, which are *malum in se*—both parties are *in pari delictu;* and when either party brings an action on the contract or matters growing out of it, they are told, in the language of Mr. Chief Justice Wilmot: "You shall not stipulate for iniquity. All writers upon our law agree in this: no polluted hand shall touch the pure fountains of justice. Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a Court to fetch it back again; you shall not have a right of action, where you come into a Court of justice in this unclean manner, to recover it back." (*Collins* v. *Blantern*, 2 Wilson, 341.) A review of the authorities at this time would not add strength to the doctrine, for it is considered on all hands as beyond the reach of attack. Most of the cases cited by counsel have relation to contracts involving matters that are merely *mala prohibita*, without any taint of moral turpitude, and in which it was held that the party who was not found to be *in pari delictu* was permitted to recover; but there is no occasion to raise this or the like questions here, for in a contract of the character of the one before us, the parties are alike guilty. (See Chitty on Con. 625; Pars. on Con. 253; 1 Story Eq. Jur., Sec. 296; *Howson* v. *Hancock*, 8 Term R. 575; *White* v. *Franklin Bank*, 22 Pick. 181; *Lowell* v. *Boston & Lowell R. R.*, 23 Pick. 24; *Tracy* v. *Talmage*, 14 N. Y. 167.)

. Wiley, then, under this rule, could not have recovered the money he advanced to McCarthy, unless the fact that the contract was rescinded modifies or changes the rule. The plaintiff's position is, that the contract having been rescinded and annulled before performance, Wiley was entitled to recover the money he had paid on the contract, and he argues that, as both or either of the parties to a contract void as against public policy may rescind it, the usual consequences would follow the rescission, as in contracts not tainted with illegality. But it seems clear, in our opinion, that the prin-{

ciples of rescission have no sort of application to a contract of this kind. It was totally void at its inception, and never acquired any subsequent validity. The rescission of it would be as idle as the attempted rescission of an unsigned promissory note. There was nothing which the *law will recognize* as a contract to be rescinded. Legal remedies are not withheld or granted accordingly as the parties have or have not accomplished the illegal act, but they are withheld because the parties have entered into a contract involving an illegal act. The rescission of the contract, therefore, before the performance of the illegal act stipulated for, would not remove the taint of illegality attaching to all that was done under the contract. The Courts, refusing to defile their hands with those transactions, deny the parties all relief in respect to the contract, or anything incidental to it or growing out of it.

There being no liability or implied promise on the part of McCarthy to repay Wiley the money he paid under the contract, and there being no other consideration for the note, it is without consideration; and as the plaintiff took with notice, he is not entitled to a recovery.

Judgment reversed, and cause remanded, with directions to overrule the demurrer to the answer, and remittitur directed to issue forthwith.