[L. A. No. 697. In Bank. — April 30, 1901.]

WILLIAM L. WILLS, Plaintiff, Respondent, and MARY PIERPONT et al., Interveners, Respondents, v. GEORGE K. PORTER and PORTER LAND AND WATER COMPANY, Appellants.

CORPORATION — CONTRACT WITH STOCKHOLDER — GUARANTY OF LOAN — PAYMENT OF DEBT NOT DUE — RESCISSION — ACTION BY ANOTHER STOCKHOLDER — LACHES. — Where a corporation, in consideration of the guaranty by a stockholder of its note for money borrowed, agreed by resolution to pay him out of the loan an amount due him, without waiting for payment out of the proceeds of lands sold by him to the corporation, as contemplated by a prior contract, a proceeding by another stockholder to compel the corporation to rescind the resolution and contract of payment, and to recover the sum paid out of the loan, instituted two years after the date of the resolution, without explanation of the delay, is barred by laches for want of the promptness and diligence in seeking a rescission required by section 1691 of the Civil Code.

ID. — PLEADING — KNOWLEDGE OF RESOLUTION AND ACTS — PRESUMPTION. — Where the complaint of the stockholder who instituted the suit, and also that of the intervening stockholders, alleged merely that, when the resolution was passed, the complaining stockholders had no notice thereof, and no knowledge of the acts consummated thereunder, the presumption is justified that they acquired knowledge thereof immediately thereafter.

ID. — DECREASE IN VALUE OF LANDS. — Where the complaint shows that the lands purchased by the corporation from the guaranteeing stockholder had decreased in value during the delay of two years, and that, as the result of the payment, he had lost all control over them, and it is a fair conclusion that he had been lulled into security by the delay, and into the belief that there was no objection to the contract, and that to take the payment from him and throw back upon him the depreciated lands, leaving him still subject to the guaranty, would be inequitable, the laches of the complainant is apparent, and without excuse for the delay.

ID. — INEQUITY OF COMPLAINT AND DECREE — CONTINUANCE OF GUARANTY. — A complaint by the stockholder, seeking relief only as to that portion of the resolution which provided for payment of the money out of the loan, still leaving upon the guarantor the burden of the guaranty of the unpaid loan made to the corporation, which was the consideration of the resolution for the payment, shows inequity, and a decree enforcing such complaint is inequitable.

ID. — EQUITABLE MODIFICATION OF DECREE — RELEASE OF GUARANTOR. — If it were not for the laches of the complainant barring any relief,

the inequity of the decree might be remedied by an equitable modification thereof, so as to require the repayment to be made at a time fixed, on condition that the corporation either extinguish the loan guaranteed, or in some other manner procure the release of the guarantor from liability on his guaranty.

ID. — RIGHTS OF COMPLAINING STOCKHOLDER — REPRESENTATIVE CAPACITY — RESTITUTION NOT REQUIRED BEFORE SUIT. — The complaining stockholder is not required to place the guaranteeing stockholder *in statu quo* as a condition precedent to the suit; but he acts only in a representative capacity, on behalf of the corporation, and his recovery can be no other than that which the corporation itself might obtain, if the cause were prosecuted by its directors. In such an equitable suit by a stockholder, the court may do exact justice between all the parties to the action by its decree, without reference to the mere offers and demands of the parties.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, H. W. O'Melveny, and J. H. Shankland, for Appellants.

Smith, McNutt & Hannon, and Winder & Davis, for Respondents.

THE COURT. — This action was brought by plaintiff, as a stockholder of the Porter Land and Water Company, a corporation, for the purpose of annulling a certain resolution passed by the board of directors of said corporation, and of recovering of defendant Porter $46,650 and interest thereon, the said sum having been paid to Porter under the authority of the board of directors and by virtue of said resolution. A complaint in intervention was filed by certain other stockholders. A demurrer was interposed to the complaint and to the complaint in intervention, and overruled, and answers filed. After trial, findings were filed, and judgment entered thereon in favor of plaintiff and the interveners. A motion for a new trial was made and denied, and this appeal is from the judgment and order denying the motion.

The complaints as amended allege, in substance, that on the twenty-third day of April, 1887, the defendant Porter entered into a written contract with one McFarland, by the terms of which the corporation defendant was to be formed, and Porter

was to convey to it, for the considerations therein named, six-
teen thousand acres of land of the ranch ex-Mission San
Fernando. Porter then supposed the ranch contained eighteen
thousand acres, and under the contract he was to retain two
thousand acres for his own use, and to convey just sixteen
thousand acres to the corporation, and if, upon a survey being
made of the ranch, there proved to be less than eighteen
thousand acres, the amount reserved by Porter should be
diminished and the full sixteen thousand acres conveyed to the
corporation. The corporation was formed as provided for in
said contract, and a survey made of the ranch, by which it was
found that the ranch contained 18,734 acres, or 734 acres more
than the number of acres to be conveyed to the corporation,
after reserving 2,000 acres for Porter. The corporation, after
its formation, duly adopted the contract so made by Porter
with McFarland, and after the survey of the said ranch it
entered into a supplemental contract with Porter in regard to
the 734 acres. This supplemental contract recited that the
original contract was for the conveyance of 16,000 acres, and
that there was 16,734 acres, and that it was impracticable to
segregate the 734 acres from the 16,000 acres. It then pro-
vided that Porter should convey the 734 acres to the corporation
by the same conveyance, and with the 16,000 acres. It was
further provided, as the consideration for the 734 acres, that
the corporation should improve, subdivide, and sell it with the
16,000 acres, and out of the proceeds, after paying expenses
and commissions *pro rata*, to account for and pay to Porter the
sum of forty dollars per acre for each and every acre of the
said surplus, and all sums above forty dollars per acre to be
retained by the corporation as compensation for improving
and selling it. It was further provided that the payment to
Porter for the 734 acres should be made whenever dividends
on the capital stock should be declared, and should in all cases
be in the proportion of money on hand when the dividends are
declared that 734 bears to 16,734, less the proper proportion of
costs, expenses, and commissions. These payments to Porter
were to bear interest from the 16th of August, 1887, at the
rate of six per cent per annum, but Porter was to have no in-
terest, except as a stockholder, in whatever interest might be
realized upon the profits of the sales of the 734 acres. The
said Porter, in pursuance of the contracts, duly executed a

deed to the corporation of the 16,734 acres, and certain personal property, also included in the agreement.

The capital stock of the corporation consisted of 524 shares, of which defendant Porter owns 336, plaintiff 5, and the remaining shares by the interveners and others named in a list attached to the complaint.

The directors of the corporation were, at all times named in the complaint, Yarnell, Threlkeld, Graves, Forrester, Witmar, Hubbard, and Cochran, and of these directors it is alleged that Yarnell, Threlkeld, Witmar, and Graves each hold one share only, conveyed to them respectively by Porter to qualify them to serve as directors, and that they have at all times acted in the interest of Porter and as his agents and trustees.

On the twenty-ninth day of March, 1895, the corporation was indebted, over and above its indebtedness to Porter, in the sum of about fifty thousand dollars, and on said date, at a meeting of the directors of the corporation for the alleged purpose of concentrating all the indebtedness, a resolution was passed to borrow from the Los Angeles Savings Bank the sum of one hundred thousand dollars, and that the corporation execute its note and mortgage for the amount, with interest at the rate of seven per cent per annum, net, and the board of directors further adopted the following resolution:—

"In consideration of the guaranty by George K. Porter of this company's note to the Los Angeles Savings Bank for one hundred thousand dollars, resolved, that this corporation pay to said George K. Porter the amount due him under the contract of date June 29, 1887, at this time, out of money borrowed this day, instead of waiting until the same can be paid out of the proceeds of land sales, the amount now due being $45,650, or thereabouts; the said George K. Porter to rebate interest on the amount paid him, at the rate of one per cent per annum, until said loan of $100,000 is paid off."

It is further alleged, that in pursuance of the said resolution the said loan was effected, and that the said note and mortgage of $100,000, and some interest thereon, still remains due and unpaid; that the agreement of Porter to guarantee the payment to the Los Angeles Savings Bank was without substantial value; and that Porter received $45,650 of the said money so borrowed by the corporation. It is alleged that in the passage of the said resolution a majority of the directors were acting

under the influence of Porter, and for his interest and under his direction and control; that the resolution was secured by the undue influence of Porter, and was the result of a fraudulent contrivance and combination between the said directors and Porter, "in order to pay the debt of the said Porter, that was not due, and that would come due only upon the sales of land." It is further alleged that on the nineteenth day of March, 1897, the plaintiff demanded, in writing, of the directors of said corporation "to take steps at once to procure the rescission of said contract, and to compel the said Porter to account to the said corporation for the money received by him as aforesaid, or upon his refusal to take the proper legal proceedings, to compel him to do so"; that the directors refused to take any such steps or to institute any legal proceedings, and for this reason the plaintiff, as a stockholder, brings this suit and makes the corporation a defendant.

The prayer of the complaint is, that the resolution of March 29, 1895, be rescinded and set aside, and also the contract thereby made between the said corporation and the said Porter, and that Porter be required to pay the said sum of $45,650, with interest thereon at the legal rate, to the corporation, or that the same be credited and paid upon the note and mortgage held by the Los Angeles Savings Bank.

The complaint was filed some two years after the resolution complained of, and after the note and mortgage had been executed, and guaranteed by Porter. There is no allegation that any interest has been paid upon the note and mortgage, and we must therefore assume that the note, and interest thereon since the twenty-ninth day of March, 1895, still remains due and unpaid, and guaranteed by Porter.

The complaint expressly alleges that the guaranty by Porter of the $100,000 note was made in consideration that the corporation pay to Porter the $46,650, and that the money was paid to him. While the corporation yet has the loan secured by the guaranty of Porter, it is sought to recover back the consideration for which the guaranty was given, and still hold Porter as guarantor. Relief is asked as to that portion of the resolution that is injurious to the corporation, while the benefit that was given by Porter in consideration of the resolution is to be retained. No offer is made to pay the one-hundred-thousand-dollar note and interest, and there is nothing to show any intention to release the defendant Porter from his contract.

But, nevertheless, it cannot be held, as appellants argue, that, before plaintiff could maintain this action for a rescission, he must have placed, or offered to place, Porter in the position which he occupied at the time the transaction was consummated, or in other words, that plaintiff must have relieved Porter from his guaranty to the bank, and reimbursed him for any loss which he may have sustained by reason of his guaranty. Under the peculiar facts of this case, it would be impossible for the plaintiff, who, after all, is acting but in a representative capacity on behalf of the corporation, so to do. As plaintiff is suing on behalf of the corporation, his recovery can be no other than that which the corporation itself might obtain were the cause prosecuted by its own officers. The court is not limited in this equitable action by the mere offers and demands of the parties. It may do exact justice between them all. The decree, as entered, is clearly inequitable in compelling Porter to return the forty-six thousand dollars, with interest, while at the same time leaving him as guarantor upon the corporation's debt for the full amount of that debt. But if this were the only difficulty which the case presented, it could easily be remedied by a modification of the decree compelling Porter, within a fixed, reasonable time, to restore the money upon condition that the corporation itself either extinguish the debt upon which he was guarantor, and thus relieve him from his contract, or in some other equally efficacious manner accomplish the same result.

But the difficulty with this action is more serious than the mere form of the decree. It goes to the right of plaintiff to maintain it at all. Prompt action upon the part of the complainant is essential to the right of rescission. It is provided in section 1691 of the Civil Code that "rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: 1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and 2. He must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same upon condition that such party should do likewise, unless the latter is unable or positively refuses to do so."

The complaints of plaintiff and interveners, as amended,

allege that when the resolution was passed and the acts consummated, the complainants had no notice thereof, and no knowledge that any such acts had been consummated. They do not say when they obtained knowledge, and their silence is significant of the fact, or at least justifies the presumption, that they acquired this knowledge immediately afterwards. But two years elapsed from the date of this contract to the date of the commencement of this suit, and no explanation at all is offered for such unreasonable delay. Moreover, it appears affirmatively by the complaint that, after the consummation of the agreement, the lands of the corporation decreased in value. The result, then, so far as Porter is concerned, was, that he parted with the absolute title and control of the property, was lulled into security and into the belief that no objections were to be made to the contract for fully two years, at the end of which time, without reason shown for the delay, he is to be subjected to the penalty of a heavy money judgment, and of having the lands which he had sold turned back under the earlier agreement with depreciated value, while, during all of this time, he has been held as guarantor upon the corporation's debt. Clearly, plaintiff and interveners have not acted promptly or used due diligence in bringing this action. (2 Parsons on Contracts, 680; *Barfield* v. *Price*, 40 Cal. 542.) In the case of *Marten* v. *Burns Wine Co.*, 99 Cal. 355, it was held that a delay of three months in an offer to rescind a purchase of stock, after discovery of the facts constituting fraud in the purchase, was fatal to a rescission. In *Bailey* v. *Fox*, 78 Cal. 389, it was held that a delay of four months after the discovery of fraud in a partnership contract was fatal to the right to rescind. In this case, as has been said, the unexplained delay was for a period of two years.

We think, therefore, that the demurrers to the amended complaint should have been sustained.

The judgment and order appealed from are therefore reversed, with directions to the trial court to sustain defendants' demurrers, with leave to plaintiff and interveners to amend if they shall be so advised.

Temple, J., dissented.

Beatty, C. J., did not participate in the foregoing.