[L. A. No. 1687. In Bank.—August 19, 1907.]

CALIFORNIA FARM AND FRUIT COMPANY, LIMITED, and DUGALD SCOTT, Appellants, v. LEOPOLDO SCHIAPPA-PIETRA et al., Respondents.

ACTION FOR RESCISSION—FRAUDULENT CONSPIRACY—ACCOUNTING—INABILITY OF DEFENDANT TO RESTORE—OFFER BEFORE SUIT NOT REQUIRED.—In an action which is primarily in equity for the rescission of a sale and conveyance of property to trustees for the corporation, in which a fraudulent conspiracy and misrepresentations of the owner and his agent and the trustees are alleged, and in which it is sought to cancel the stock and bonds held by such agent, and to

cancel notes given upon the purchase, and which necessarily involves an accounting to determine the amount due to the plaintiffs, and in which it appears that the former owner had put it out of his power to make restitution, and that the rights of all the parties can be fully protected by the decree, the case appearing is an exceptional one, in which a prior offer of the plaintiffs to make restitution would be a vain thing and is not required. It is sufficient that plaintiffs offer to do equity.

ID.—ABSENCE OF UNDUE DELAY—FORMER SUIT IN FEDERAL COURT—NOTICE OF RESCISSION.—The delay of three months in bringing the present suit is fully excused by evidence that a former suit in the federal court was instituted by plaintiffs as a corporation and a resident of Great Britain, seeking the same relief, which was dismissed only because it appeared that one of the defendants, the former owner of the land, supposed to be a citizen of California, was in fact shown to be a subject of the kingdom of Italy. If any notice of rescission before the present suit was required, such former suit operated as such notice.

ID.—PLEADING—DISTINCTION BETWEEN AMENDED AND SUPPLEMENTAL COMPLAINT.—An amended complaint and a supplemental complaint, though both incorporated into one document, in which the supplemental complaint is distinguished only by being contained in separately but consecutively numbered paragraphs, are nevertheless to be considered as separate pleadings. The complaint, whether original or amended, can properly speak only of things which occurred before or concurrently with the commencement of the action. But the office of the supplemental complaint is to bring to notice things occurring after the commencement of the action, and which do or may affect the rights asserted and the relief asked in the action as originally instituted.

ID.—JOINDER OF TRUSTEES AS PARTIES — FRAUDULENT CONSPIRACY—ACCOUNTING.—Where the trustees held the title to the property at the beginning of the action, they were properly joined as parties defendant, and they do not become improper parties because pending the action they parted with their interest, especially where they were charged with complicity in the alleged frauds and in the conspiracy by which it was carried out. They are also proper parties to any investigation of their expenditures and claims as trustees.

ID.—JOINDER OF ENGLISH STOCKHOLDER WITH CORPORATION DEFRAUDED.—The joinder of an English stockholder with the corporation defrauded was not under the rules of equity a fatal misjoinder where he was one of the parties defrauded and holds bonds of the corporation which are a lien upon the property, and has a large share of its stock, which bonds and stock may be necessary to be transferred to the former owner upon the equitable rescission asked, and which he offers to deliver up for that purpose.

ID.—POWER OF COURT OF EQUITY.—A court of equity may mold its decree to suit the exigencies of the case, and may determine the ultimate

rights of the parties on either side, as between themselves or the opposing party, and render a decree accordingly.

ID.—CAUSES OF ACTION NOT MISJOINDER.—The complaint states but one cause of action, and there is no misjoinder of causes.

ID.—IMPROPER ORDERS STRIKING OUT—SUMS EXPENDED—DILIGENCE.— The court improperly struck from the complaint sums expended on account of the transaction, including interest paid to the former owner, expenses of operating the ranch, expenses of agents in transacting business, and moneys expended in good faith, while plaintiffs believed the false representations made to be true, and before discovery of their falsity, and also improperly struck out facts showing diligence in promptly prosecuting the action.

ID.—DEPOSITION OF WITNESS BEFORE ANSWER FILED—COST-BILL.—The deposition of a witness may be taken in an action at any time after the service of the summons or the appearance of the defendant, and the cost thereof may be properly included in the cost-bill of the party taking it. Such deposition may be taken by either party to the action.

APPEAL from a judgment of the Superior Court of Ventura County. Felix W. Ewing, Judge.

The facts are stated in the opinion of the court.

John S. Chapman, and J. H. Shankland, for Appellants.

Lynn Helm, Barnes & Selby, and Edward M. Selby, for Respondents.

THE COURT.—In this action demurrers interposed by defendants to plaintiffs' amended complaint were sustained with leave to plaintiffs to amend. Plaintiffs failed to amend, and judgment was thereupon given for defendants. Plaintiffs appeal from such judgment. The amended complaint, as we read it, states substantially the following facts: Defendant Schiappa-Pietra (hereafter referred to as Pietra) was the owner of a tract of land in Ventura County, consisting of 6,962.31 acres, part of the Rancho Santa Clara del Norte, and 5,375 shares of the capital stock of the Santa Clara Water and Irrigating Company. On March 20, 1902, through the medium of defendant Temple, he sold all of said property to plaintiff corporation, the terms agreed on being as follows: The total purchase price was $1,113,880, of which one hundred and twenty-five thousand dollars was to be paid in cash, nine

hundred and twenty-five thousand dollars was to be evidenced by promissory notes payable at various times between that date and January 1, 1912, and $63,880 was to be evidenced by a promissory note which was to be replaced, and which was in fact replaced, on July 5, 1902, by sixty-four interest-bearing bonds of the corporation, sixty-three for one thousand dollars each and one for eight hundred and eighty dollars, issued to Pietra. The transaction was had as of the date of January 2, 1902. Pietra executed to Temple a conveyance of the property, and an assignment of all the leases and rents reserved thereon, such leases covering all but about eight hundred acres of the land. Temple executed and delivered to Pietra the promissory notes. As security for the payment of the indebtedness, he executed to defendants Power and Foster deeds of trust, covering all of said property, and conferring power on them to collect all rents and apply them to the indebtedness. He caused the shares of stock of the water company to be transferred on the books of the company to said trustees as security. He further agreed to cultivate the portion not covered by leases, and executed to Pietra a crop mortgage covering the crops to be raised. He then transferred all the property, subject to the encumbrances thus created, to the corporation. It was stipulated in the trust-deeds that a sale of the property by the trustees under the terms of the deed should be a full satisfaction of the indebtedness other than that evidenced by the bonds, no personal liability thereon surviving. The corporation was thereupon placed in possession of the property, and, so far as appears, continued in such possession until March 2, 1904, a few weeks subsequent to the commencement of this action, when Pietra, under a deed executed in pursuance of a sale made by the trustees, entered into possession of all thereof. During the whole period of the possession by the corporation, all of the proceeds, income, revenue, and every other receipt of money or property accruing from the possession and farming operations of the land, amounting to $109,928.73, were delivered to and received by Pietra.

The transaction thus had was induced, so far as plaintiffs were concerned, by the solicitations and representations of Temple. He had gone from California to Manchester, England, where plaintiff Scott resided, holding a purported option

for the purchase of the property at a specified sum, and, in the guise of one seeking financial help in a matter in which he himself desired to participate as an investor, had there sought to interest Scott. He made certain representations in regard to the value of the property and its income capacity, and the adaptation of portions thereof for town-site purposes, which need not be recited here, as it clearly appears from the complaint that Scott, through agents of his own, examined the property and the merits of the proposed enterprise, and, further, that he was satisfied, as a result of those investigations, that the property was not worth exceeding nine hundred thousand dollars.

Temple did, however, represent himself as a man of means, desirous of joining in this purchase, and able to respond to any call made upon him for funds in the matter. He persuaded Scott to join him, and they caused the plaintiff corporation to be organized under the laws of the kingdom of Great Britain, for the purpose of carrying out their plans and purposes, in the event that the purchase should be made. It was agreed that they would at all times subscribe for an equal number of shares in the corporation. It was further agreed, as an inducement to the purchase, that Temple would personally pay from his share of the profits, or otherwise, the excess over one million dollars paid to Pietra, with interest thereon. Temple agreed to subscribe and pay for fifteen thousand shares of one pound each, and it was further agreed between Scott and Temple that they would provide such further sums as might be necesary from time to time.

It was the understanding of plaintiffs, induced by the representations of defendants, that Temple paid to Pietra seventy-five thousand dollars of the one-hundred-and-twenty-five-thousand-dollar cash payment for the property, Scott advancing the remaining fifty thousand dollars, and stock of the corporation for that amount was subsequently issued to him upon that theory.

As a matter of fact, Temple was at all times acting as agent of Pietra for the sale of this property. The purported option was given him by Pietra solely for the purpose of enabling him to appear in the capacity in which he represented himself. He had not the financial ability to pay any of the amounts that he agreed to pay or to keep his part of the agreement with

Scott and the corporation. His seventy-five-thousand-dollar portion of the one-hundred-and-twenty-five-thousand-dollar cash payment was not required by Pietra to be paid at all, and such payment was never intended to be required, the representations in regard thereto being made solely for the purpose of inducing the payment by Scott of the fifty-thousand-dollar portion and the entering by him and the corporation into the transaction. Scott personally advanced the fifty thousand dollars so paid, and subsequently received from the corporation stock thereof for that amount. The promissory note for $63,880, to be replaced, and which was replaced, by the bonds of the corporation, was executed not as a part of the purchase price, but solely for the purpose of requiring the plaintiffs to pay this amount to Temple for his services rendered to Pietra in the matter of such sale, it being the intent of Pietra and Temple that said bonds should subsequently be transferred to Temple. The actual purchase price to be received by Pietra was thus only nine hundred and seventy-five thousand dollars. Temple never paid to the corporation any portion of the money he had agreed to pay. Upon the claim made by him that he had paid for the corporation the seventy-five thousand dollars at the time of the transaction, and various other sums aggregating $19,213, 19,213 shares were issued him by the corporation, five thousand of which he subsequently sold to Scott. Temple subsequently became indebted to defendant Newhall, and transferred to him as security his remaining 14,213 shares, and also twenty of the one-thousand-dollar bonds issued by the corporation to Pietra, and which had been transferred to Temple. Pietra still holds thirty-three of said one-thousand-dollar bonds, Scott five, and Temple one. As to the whereabouts of the remaining five bonds plaintiffs have no knowledge. Scott holds all the stock of said corporation except the 14,213 shares now held by Newhall as security for Temple's indebtedness, and some one hundred and fifty shares which are subject to his control.

Plaintiffs never discovered that any of Temple's representations, all of which are alleged to have been the result of a conspiracy between Pietra and the other defendants, except Newhall, were false, until in November, 1903. On December 26, 1903, they commenced an action against the defendants here in the United States circuit court in and for the southern

CLI Cal.—47

district of California for a rescission of the transaction and an accounting, and in their bill asked "that said trustees be directed to reconvey the said property to the said Schiappa-Pietra and did offer to surrender up the same, and everything obtained by, through, or under the said transaction, and offered to surrender up to be canceled all the stock . . . upon such terms and conditions as to the said court might seem just." This suit was so brought under the belief that all the defendants were citizens of the state of California, but it subsequently appearing upon a plea made by the defendants therein that Pietra was a subject of the kingdom of Italy, the court dismissed the suit upon the ground of want of jurisdiction.

In February, 1904, this action was commenced by plaintiffs in the superior court of Ventura County, against Pietra, Temple, George C. Power, and Eugene P. Foster, trustees under said deed of trust, and W. S. Newhall. In the supplemental and amended complaint, filed April 15, 1904, is contained the allegation of the sale by the trustees under the trust-deed on March 2, 1904, and the delivery of the property thereunder to Pietra. Except for the allegation as to the offer made in the bill filed in the United States circuit court, this is the only allegation as to any restoration of the property or offer to restore or notice of rescission.

The action is primarily for a rescission of the transaction on account of the fraudulent representations, and the restoration of the parties, so far as possible, to the position they occupied at the time of entering into the same. To this end, the setting aside of the deed of the property, the cancellation of the notes and bonds given upon the purchase, and an accounting to determine the amounts due plaintiffs are asked. As to the defendant Newhall, it was alleged that he took the stock and bonds from Temple with notice of the frauds, and it is asked that if it be found that he took in good faith, the amount due thereon be decreed a lien on the property of Pietra conveyed by the trust-deed. Subject to this claim of Newhall, it is also sought to have the stock of the corporation issued to Temple canceled.

The demurrers interposed were based on various grounds, among which was the general ground that the complaint did not state facts sufficient to constitute a cause of action. Under

this, the. principal question discussed is whether the complaint failed to state a cause of action for failure to allege a rescission, and restoration or offer to restore what plaintiffs had received under the contract, before bringing this suit.

Section 1691 of the Civil Code states the general rule applicable to one desiring to rescind. He must rescind promptly upon discovering the facts which entitle him to rescind, and he must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so. It will be assumed, in accord with the views expressed by this court in several cases, that one invoking the aid of equity to obtain a decree of rescission must comply with this rule as a condition precedent to action, except in exceptional cases where, by reason of the circumstances, restoration or offer to restore is not essential, and that in this regard there is no distinction between an action on the equitable side of the court to obtain a decree of rescission and an action maintained on the theory that a rescission has been fully accomplished by the acts of the party. (*Kelley* v. *Owens,* 120 Cal. 502, [47 Pac. 369, 52 Pac. 797] ; *Westerfeld* v. *New York Life Ins. Co.,* 129 Cal. 68, 84, [58 Pac. 92, 61 Pac. 667]; *Toby* v. *Oregon Pacific R. R. Co.,* 98 Cal. 490, 499, [33 Pac. 550].) These rules are based on the equitable doctrine that he who · seeks equity must do equity, and are applicable in every case where compliance therewith can be had without injury to the rights of the rescinding party and is essential to the protection of the other party. There are, however, exceptions to the rule as to restoration, also founded on equitable considerations. In *Kelley* v. *Owens,* 120 Cal. 502, [47 Pac. 369, 52 Pac. 797], this court recognized the existence of such exceptions in the following language: "There are exceptional cases where restoration or an offer to restore before suit brought is not necessary—as, for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore; or where, without any fault of plaintiff,

there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties—and it will be found that such instances, or others similar to them in principle, are those to which the authorities cited by appellants generally relate." Some of the cases thus instanced are excepted by the terms of the statute, as in the case where the thing received by the plaintiff is of no value whatever to either party, but others are not. It is settled by our decisions that one attempting to rescind a transaction on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain. (See *Matteson* v. *Wagner,* 147 Cal. 739, 743, [82 Pac. 436], and cases there cited.) This is upon the theory that the defendant could not possibly have been injuriously affected by the failure to restore, and the plaintiff might be, for he might not be able to again collect the amount from the defendant, if it should be so restored to the defendant. One of the exceptions recognized in *Kelley* v. *Owens* is where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties. (See, also, *Thackrah* v. *Haas,* 119 U. S. 499, [7 Sup. Ct. 311]; *Wills* v. *Porter,* 132 Cal. 516, 521, [64 Pac. 896].) Another exception recognized by this court is that of the case where the taking of an account is necessary for the ascertainment of the sum to be repaid, or the sum is to be liquidated by an adjudication based on evidence of facts independent of the terms of the contract itself. In such a case, as the plaintiff cannot determine in advance of the suit the amount by him to be repaid, an offer to refund such sum as shall be decreed is a sufficient offer to do equity. (*Sutter-St. R. R. Co.* v. *Baum,* 66 Cal. 44, [4 Pac. 916].) The authorities fully sustain the proposition that an offer to restore before action is not essential where the rights of the other party can be fully protected by the decree, and such restoration cannot be made without injuriously affecting the rights of the party seeking rescission, or the relative rights of the parties in the event of a rescission cannot be determined without an accounting. The statute itself dispenses with the

necessity of such an offer where the other party is himself unable to restore what he has received. In such event an offer on the part of the rescinding party would be a vain thing, and the respective rights of the parties can be fully guarded by the decree.

We think it is manifest that this case falls within the exceptions to the rule as to restoration or offer to restore. If their claims in regard to the contract were well founded, plaintiffs were entitled, upon delivery to Pietra of the property transferred to them, to receive not only the money and obligations they had given therefor,—namely, the fifty thousand dollars and the sixty-four bonds of the corporation,—but also such amounts as they had properly expended in the management of the property in accordance with their contract with Pietra, who had himself received all the proceeds. They were entitled to be reimbursed for all amounts they had properly expended under their contract with Pietra, and thus put in the position they occupied at the time of entering into the same. An accounting was undoubtedly essential to the determination of the amount to which they were so entitled, for no one could undertake to determine that amount in the absence of such an accounting. A restoration of the property received by them,—viz. the possession of the property and the title thereto, subject to the trust-deeds and other encumbrances,—upon the restoration of the property received by Pietra from them, —namely, the fifty thousand dollars and the sixty-four bonds, —would not have reimbursed them as to any portion of the amount so expended. We think, too, that they were entitled to look to this property for such reimbursement and for protection against such outstanding bonds as could not be recovered, and, consequently, entitled to retain possession of it for that purpose until the amount due them could be determined and their rights protected in a proceeding in which the rights of Pietra also could be fully guarded. In addition to this, we think it sufficiently appears from the allegations of the complaint that Pietra himself was, at the time of the commencement of this action, unable to restore certain of the property received by him from the plaintiffs,—namely, certain of the bonds of the corporation which had been transferred to other parties. As is said by plaintiffs' counsel, the facts of this transaction are exceedingly complicated, and it

is very clear that the terms upon which a rescission should be had and the property received restored, can only be determined upon a judicial investigation, in which the rights of all the parties can be fully guarded. We are therefore of the opinion that the circumstances shown by the complaint fully justify the failure of plaintiffs to offer to restore possession of the property before the commencement of the action, and bring the case within those classes of cases in which no such offer is necessary as a condition precedent to action.

Under the facts of this case it is clear that there was no undue delay on the part of plaintiffs in moving for rescission. Their delay of some three months in commencing this action was fully excused by the allegation showing the commencement of a similar suit in the United States circuit court under the misapprehension that Pietra was a citizen of California, and the dismissal of the same by the court upon the plea made by him that he was a subject of the kingdom of Italy. If we concede that notice of rescission was a condition precedent to action, we are of the opinion that such action in the circuit court was a sufficient notice to satisfy all requirements as to this action.

As we read the brief of counsel for the defendants, it is not contended that the complaint fails to state a cause of action against any defendant other than as to the matters hereinbefore discussed, except as to defendants Power and Foster as trustees under the trust-deed. It is claimed that as the supplemental and amended complaint shows that after the commencement of the action they sold the property to Pietra under the terms of the trust-deed, and, so far as appears, in full accord therewith, and delivered possession thereof to him, and no longer make any claim thereunder, such complaint fails to state a cause of action against them.

Herein counsel fail to note the distinction between a complaint and a supplemental complaint. Although in this instance they are both incorporated into one document, styled an amended and supplemental complaint, and the supplemental complaint is distinguished only by being contained in separately but consecutively numbered paragraphs, they are nevertheless to be considered as separate pleadings. The complaint, whether original or amended, can properly speak only of things which occurred either before or concurrently

with the commencement of the action. The office of a supplemental complaint is to bring to the notice of the court and the opposite party things which occurred after the commencement of the action, and which do or may affect the rights asserted and the relief asked in the action as originally instituted. If, upon the conditions existing when the action was begun, Power and Foster were proper parties to the action, they do not become improper parties, in the sense that they were improperly joined, by reason of the fact that after the action was begun they parted with their interest in the subject-matter and thereby terminated their liability. The propriety or necessity of joining them was a matter which the plaintiffs were obliged to determine when the action was begun. Having been properly joined as parties, as matters then stood, they are proper parties to the action thereafter, until something occurs which dispenses with their further presence, in which case the proper course is to dismiss the action as to them, and not to sustain a demurrer to the complaint because of the supposed improper joinder. In such a case the sufficiency of a complaint, with respect to the question of the proper joinder of all the parties originally included, is to be determined by reference to the facts existing and disclosed by the complaint at the beginning of the action. At the time this action was begun Power and Foster still held the title to the property involved in the action, and they were properly joined. While the sustaining of a demurrer on this ground is often a convenient way of excluding a party from further participation in the case, practically equivalent to a dismissal, and therefore to be deemed harmless error, it is not the technically correct method of dealing with the proposition that such party is no longer interested in the outcome of the action nor liable to judgment therein. Such joinder is not a matter of which the other parties can complain, unless it causes additional cost to them. (15 Ency. of Plead. & Prac., p. 698.) We can perceive no harm that can result from their retention as parties, especially in view of the power of the court to adjust the costs so that, if their presence proves to be unnecessary, the costs of bringing them in and keeping them in shall fall on the plaintiffs.

We think, however, they are proper parties to the action, although they have divested themselves of title to and pos-

session of the property. They are charged with complicity in the frauds perpetrated and in the conspiracy by which it was carried out. It is possible that upon the accounting the presence of the trustees in court, or the continuance of the jurisdiction of the court over them, may be necessary to fully accomplish the relief requisite to protect the plaintiffs or to enforce their rights. Their expenditures as trustees will necessarily come under review, and certain claims made by them as trustees or otherwise must needs be settled and provided for if found just, and they are proper parties to any investigation of those subjects.

The joinder of Scott as a plaintiff was not, under the rules prevailing in courts of equity, a fatal misjoinder. It is true that the corporation plaintiff is the only party shown to be entitled to affirmative relief, and that it is the party in whom the cause of action is vested; but it appears that the plaintiff, Scott, holds bonds of the plaintiff corporation, of the face value of five thousand dollars, which were a lien upon the property, and fifty thousand dollars of its stock, and that in order to effect a complete rescission it may become necessary or desirable to have this stock and all these bonds produced and canceled, or transferred to the defendant Pietra, and this is a part of the relief asked. Scott offers to deliver them up for that purpose, or for any disposition of them which the court may deem proper. He would be a proper party defendant in order to answer as to any title he may have to them, or to oppose or advocate any proposed disposition of them, and if some disposition of them is essential to complete relief, he would be a necessary party. He, of course, took them with knowledge of the facts, except the alleged fraud of the defendants. If he desires now to make common cause with the plaintiff corporation, which is for many purposes his agent, and in which he holds the majority of stock, and makes proffer of the stock and bonds for the purposes of the suit, it is immaterial to the other defendants whether he is plaintiff or defendant. A court of equity can mold its decree to suit the exigencies of the case, and may determine the ultimate rights of the parties on either side as between themselves or the opposing party and render a decree accordingly. (15 Ency. of Plead. & Prac., pp. 672, 673.) Inasmuch as the effect of joining him as plaintiff was to avoid the cost of service of

process upon him if he was a necessary or proper party, it was to that extent beneficial to the defendants if the plaintiffs should prevail and recover their costs.

It is unnecessary to consider further the question of the misjoinder of parties. The distinct relief asked as to some of the defendants is incidental to the main case and necessary to effect a complete settlement of the matters involved in the transaction sought to be rescinded. All of the defendants were properly joined. There is really but one cause of action stated, and hence there is no misjoinder of causes of action.

A motion to strike out certain parts of the complaint was sustained. It is alleged in the complaint that certain sums were paid by the plaintiff on account of the transaction, including interest to the defendant Pietra, expenses of operating the ranch and expenses of agents transacting the business, and that certain claims are outstanding against the said plaintiff for similar expenses and other expenses incurred in the enterprise, some of which are in dispute, and that all these moneys were paid out and these liabilities incurred in good faith, while the plaintiffs believed the false representations complained of to be true, and before discovery of the falsity thereof. These matters are all material to the accounting to which the plaintiff corporation, under the facts alleged, is entitled, and were proper, though not absolutely necessary, subjects of averment to lay the foundation for that part of the relief. The court erred in striking out these allegations. It also erred in striking out the allegations of paragraph XLII½ of the complaint, containing a statement of some of the facts constituting diligence on the part of the plaintiff in promptly prosecuting the action.

The plaintiff moved to strike out of the cost-bill of the defendants an item of $193.10 for costs incurred in the taking of the deposition of a witness, H. G. Mirfin. The objection to this item was that the deposition was taken before any answer was filed, and while an issue of law upon a demurrer to the complaint, on the ground that the facts stated did not constitute a cause of action, was undetermined. There is no provision or rule of law to the effect that a deposition may not be taken before an issue of fact has been raised. The code provides that a deposition of a witness may be taken in an action at any time after the service of the summons or the

appearance of the defendant (Code Civ. Proc., sec. 2021), and that either party has the right to obtain evidence in this manner in the cases specified. (Code Civ. Proc., sec. 2031.)

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.