**Harry LOW, Plaintiff,**

v.

**ALTUS FINANCE S.A.,**
**et al., Defendants.**

**No. CV 99–02829 AHM (CWx).**

United States District Court,
C.D. California.

March 23, 2001.

Brian G. Soublet, Harry Levine, San Francisco, CA, Gary L. Fontana, Karl D. Belgum, Thelen Reid & Priest, San Francisco, CA, Patricia K. Staggs, Steven Green, San Francisco, CA, George B. Newhouse, Jr., Sharon A. Ligorsky, Thelen Reid & Priest, Los Angeles, CA, for Plaintiff.

Travers D. Wood, C. Randolph Fishburn, White & Case, Los Angeles, CA, C. Randolph Fishburn, White & Case, Los Angeles, CA, Robert M. Kelly, Donald T. MacNaughton, Richard J. Holwell, Thomas McGanney, Kirk E. Sherriff, White & Case, New York City, Jennifer Lisa Kroman, Mitchell A. Lowenthal, Cleary Gottlieb Steen & Hamilton, New York City, Stan G. Roman, Anne E. Castle, Kreig

Keller Sloan Reilly & Roman, San Francisco, CA, Catherine A. Stone, White & Case, Los Angeles, CA, Lawrence B. Friedman, Cleary Gottlieb Steen & Hamilton, New York City, Richard J. Ney, Susan St. Denis, Chadbourne & Parke, Los Angeles, CA, Whitney I. Gerald, Donald I. Strauber, Chadbourne & Park, New York City, Eugene Crew, Mark T. Jansen, Townsend Townsend & Crew, Kathleen A. Weaver, Townsend & Townsend & Crew, San Francisco, CA, Laura A. Peter, Redwood City, CA, Linda S. Peterson, Robert A. Holland, Theodore N. Miller, Sidley & Austin, Los Angeles, CA, Richard D. Bernstein, Sidney & Austin, Washington, DC, Katherine L. Adams, Sidney & Austin, New York City, Robert C. Bonner, Gibson Dunn & Crutcher, Los Angeles, CA, Robert L. Weigel, Marshall R. King, Amy L. Neuhardt, Lawrence J. La Sala, Gibson Dunn & Crutcher, New York City, Eugene Crew, San Francisco, CA, Travers D. Wood, C. Randolph Fishburn, White & Case, Los Angeles, CA, Donald T. Mac-Naughton, Richard J. Holwell, Thomas McGanney, Kirk E. Sherriff, White & Case, New York City, Jennifer lisa Kroman, Mitchell A. Lowenthal, Cleary Gottlieb Steen & Hamilton, New York City, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

MATZ, District Judge.

## I.

## INTRODUCTION

A. *Overview of Motions*

### 1. *The Artemis Parties' Motions*

The Artemis Parties (including Francois Pinault) moved to dismiss the claims

against them in the Third Amended Complaint ("TAC") on the following basic grounds:

(1) In Section 23.18 of the Rehabilitation Plan, which became effective September 3, 1993, Plaintiff ("the Commissioner") released their predecessors-in-interest (the "Altus parties") from liability;

(2) The claims are barred by the applicable statutes of limitation; and

(3) Certain damages claim and remedies, such as restitution and unjust enrichment, are unfounded or are unavailable to the Commissioner, primarily because the plaintiff seeks to enforce a contract. Nor may the Commissioner repudiate the contracts and seek to rescind them, because he alleged at paragraph 86 of the TAC that he

> seeks to recover the profits lost as a result of entering into the agreement to sell ELIC's bond portfolio and insurance business to the Altus/MAAF group. Because of the passage of time, the parties' [sic] reliance upon the terms of the sale and the effect rescission would have on the policyholders, it would be impractical and impossible for plaintiff to return the consideration he received pursuant to said agreement.

In addition, Plaintiff is estopped from making or establishing certain assertions about his damages, having previously vouched for the Rehabilitation Plan as the best available alternative.

The Artemis Parties also joined in the Aurora Parties' motions, described below.[1]

### 2. *The Aurora Parties' Motion*

Aurora National Life Assurance and New California Life Holdings ("NCLH")

---

1. Altus Finance, Credit Lyonnais S.A., Consortium de Realisation S.A., CDR Enterprises, MAAF Assurances, MAAF Vie, Jean Claude Seys and Jean Irigoin joined in the motion of the Artemis parties.

(collectively, the "Aurora Parties")[2] moved to dismiss the claims against them in the TAC on these basic grounds:

(1) The Commissioner cannot establish that Aurora knowingly participated in the alleged fraud;

(2) The claims were released. (This contention basically is the same as the Artemis Parties' contentions concerning release.); and

(3) The damages claims and remedies are defective, for reasons much like those asserted by the Artemis Parties.

The parties briefed these motions very extensively. They collectively filed some 150 pages of briefs, cited hundreds of cases, statements and authorities, and submitted reams of exhibits (which was procedurally questionable on motions to dismiss).

On January 31, 2001, this Court issued an abbreviated tentative order and solicited additional information from the Commissioner. After reviewing that material, the Court presided over a hearing on March 5, 2001 that lasted almost two hours.

### B. *General Considerations*

Executive Life Insurance Company ("ELIC") collapsed more than a decade ago. In its wake there emerged several complicated lawsuits, in state and federal court. Even now, there are appeals pending in the Ninth Circuit Court of Appeals in a related policyholder lawsuit; recently, hearings were conducted in the Los Angeles Superior Court (the Rehabilitation Court); and an apparently closely–related case was filed in state court and removed to this Court (*Sierra National Insurance Holdings Inc. v. Credit Lyonnais S.A,* No. Civ. 01–01339). The proliferation of lawsuits and claims has created unusual complexity—factually, legally and tactically. But there are a few basic and straightforward considerations that, although they have been obscured, are essential to this Court's rulings.

First, the heart of this case is the Commissioner's fraud claim, which is that in 1991 and continuing thereafter, Altus, Credit Lyonnais, the shareholders of NCLH (Omnium Geneve and the MAAF parties) and several of the individual defendants (Messieurs Henin, Seys and Irigoin) lied about their various relationships with each other, in order to induce the Commissioner to sell ELIC's junk bond portfolio and transfer its insurance business. More specifically, these defendants illegally concealed the fact that Altus and Credit Lyonnais would control the insurance business, with the MAAF parties acting as their "fronts."[3]

Second, the fraud and the manner in which it was carried out, including the now much-publicized. *"contrats de portage,"* were designed to enable the defendants to avoid two laws. One such law prohibited a foreign government (or its agency or subdivision) from directly or indirectly owning, operating or controlling an insurance company in California. California Insurance Code § 699.5. The other, the Federal Bank Holding Company Act, prohibited a bank holding company from owning more than 25% of any company that was not a

---

**2.** Altus Finance S.A., Credit Lyonnais S.A., Consortium de Realisation S.A., CDR Enterprises, MAAF Assurances, MAAF Vie, Jean Claude Seys and Jean Irigoin joined in the sections of the Aurora parties' motion addressing the release and the Commissioner's damages claims and remedies.

**3.** The alleged liabilities of the Aurora Parties and the Artemis Parties arise out of their later acquisitions of ownership and/or controlling interest in some of these other defendants.

bank or authorized business. 12 U.S.C. § 1841 *et seq.*

Third, the Commissioner is a public official invested with broad responsibilities for the protection of policyholders and the public generally. Had he known that Credit Lyonnais and/or Altus were going to control the insurance company, he *could not* lawfully have entered into either the Rehabilitation Plan or the Modified Plan and *could not* lawfully have sold the bond portfolio to Altus.

Fourth, because he *could not* have "done the deal," the Commissioner in fact *would not* have sold the bonds or entered into the contracts—regardless of the absence of any better alternatives or offers from other bidders.

These considerations are central to the rulings on these motions to dismiss, because they both entitle and compel the Court to assess the adequacy of the pleadings in a manner simpler and more pragmatic than the parties have chosen to do. Except for the motions based on the release, on the statute of limitations and on the imputation of knowledge to Aurora, what is really at stake is the amount of recovery the Commissioner may obtain if he succeeds in establishing fraud, and the theories of recovery are incidental to the amount.[4] Thus, in his opposition papers the Commissioner understandably seeks to preserve every possible theory to maximize damages, but in court he acknowledged, "Surely a money judgment in this case could do all, provide all the relief we need."

That statement leads to the fifth fundamental feature of this case. If the Commissioner can prove the alleged fraud (assuming that neither the release nor the statute of limitations precludes him from doing so), a verdict for plaintiff could trigger a right to recover a full range of damages under California Civil Code § 3343, including the difference between the actual value of what he gave up and the actual value of what he received, "an amount which will compensate him for profits or other gains which he might reasonably have earned had he retained [the ELIC assets]" and punitive damages.[5]

Thus, if "fraud damages" under § 3343 are available, a determination that rescission, restitution, and unjust enrichment are not available remedies or theories of recovery would not necessarily narrow the range of monetary damages. For that reason, after ruling on the challenges based on the statutes of limitations, the release and the imputation of knowledge to Aurora, the Court will address the availability of fraud damages before dealing with the defendants' other contentions.

4. To be sure, the defendants argue that if the Commissioner cannot prove he was damaged, then he cannot prove liability—even if he was deceived—because proving injury is an element necessary to prove fraud. What this argument ignores is that at this stage the issue is the adequacy of a pleading and in the TAC the Commissioner has adequately *pled* that he lost profits (¶¶ 45 and 58). In addition, the TAC is replete with allegations that demonstrate (if not specifically allege) that the Commissioner incurred expenses as a result of the alleged fraud. (*E.g.*, there are numerous allegations about the Commissioner's involvement in regulatory and judicial proceedings, which inherently entail large expenses, as this case well reflects). Moreover, a defrauded party does not have to show out-of-pocket loss in order to be entitled to recover consequential damages. *Stout v. Turney*, 22 Cal.3d 718, 150 Cal.Rptr. 637, 639, 586 P.2d 1228 (1978).

5. Of course, whatever net benefits or profits the Commissioner has derived from the "deal" would have to be offset against any monetary award. Moreover, any punitive damages award would have to withstand a constitutional challenge.

## II.

## RULINGS ON MOTIONS

### A. *The Third Amended Complaint Is Not Barred By The Statutes of Limitations*

■ Defendants argue that all of plaintiff's claims are barred by applicable statutes of limitations because as of 1994 plaintiff was on constructive notice of the illegal relationship between Altus and Aurora. However, plaintiff alleges that he did not discover defendants' deceit until January 1999 and "could not, with reasonable diligence, have discovered the fraud and deceit of defendants until on or about this date because defendants actively concealed their misconduct from plaintiff and swore one another to secrecy concerning the *contrats de portage* . . . " TAC, ¶ 83. The issue of constructive notice is too fact-intensive to be decided against plaintiff at the pleading stage; in any case, much of defendants' evidence suggests only that plaintiff was aware of a relationship between Altus and Aurora, but not the illegal control relationship that forms the basis of plaintiff's lawsuit.[6]

### B. *The Release Does Not Preclude Plaintiff From Pursuing These Claims*

■ All moving parties assert that all of plaintiff's claims are barred by the release in § 23.18 of the Rehabilitation Plan, which releases known and unknown claims "arising solely out of and in connection with the negotiation of the Agreement . . . " Plaintiff asserts that defendants fraudulently induced him to agree to the release and sought thereby to exempt themselves for responsibility for their fraud. Citing Cal. Civ.Code § 1668 ("all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . are against the policy of the law"), the Commissioner argues that he is not bound by this release. Moreover, he also argues that the terms of the release do not apply to his claims because they do not arise "solely" from the negotiation of the Agreement but arise also from defendants' alleged continuing fraud, including their fraudulent filings before the Department of Insurance.

Counsel for Aurora asserted at the hearing that "1668 is designed to protect the public from contracts that would encourage somebody to commit an improper act in the future. 1542 looks to past acts." Construed literally, what the Commissioner alleges in the TAC is *exactly* what counsel's statement describes: (i) a contractual agreement (the Rehabilitation Plan) that (ii) the releasees (defendants) intended to use in the future to (iii) commit the "improper act" of violating the state and federal laws described above. In any event, in light of the disputed scope and validity of the release, the Court finds that dismissal based on motions challenging the mere pleadings would be premature and inappropriate, notwithstanding the important policies (e.g., avoidance of litigation and finality) that have led many courts to enforce waivers of section 1542. Full-fledged summary judgment motion practice is necessary. The parties may conduct discovery as to the circumstances leading up to the execution of the release and the facts or factors that may determine the degree to which (if any) the release encompasses or bars these claims.

In their summary judgment motion papers the parties shall discuss whether a release obtained by one party for the purpose of avoiding liability for its fraud may bar claims based on that fraud; *i.e.,* does a

---

6. Because the Commissioner claims throughout the TAC that the defendants fraudulently concealed their agreement, his claims under § 17200 of the Business and Professions Code are not barred, because they were tolled.

Cal.Civ.Code § 1542 waiver take § 1668 out of the picture? The parties shall also address whether the alleged fraud upon a public official affects the validity of the release; to what extent, if any, does the public interest override a § 1542 waiver?

## C. *The Knowledge of Shareholders and Seys Can Be Imputed to Aurora*

■ Aurora's arguments fail to take into account the overriding premise of the allegations in the TAC—namely, that Aurora was purposefully created to be the vehicle by which the other defendants carried out their fraud. Thus, this is not a situation, like that in *Federal Deposit Insurance Corporation v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir.1992), where the corporation had an ongoing, pre-existing identity independent of the owner-officers who later caused it to engage in fraud. In *O'Melveny & Meyers*, the "wrongdoers were acting adversely to [the corporation] and not on its behalf" and for that reason the court found that "principles of corporate identity and agency law preclude attribution...." *Id.* at 750. Whereas in *O'Melveny & Meyers* "disaster, not benefit, accrued to [the corporation] through the malfeasance of its [officer-shareholders]," *Id.*, here the TAC alleges that all defendants, which would include NCLH, Omnium Geneve and Seys, were members of a conspiracy to acquire the ELIC assets, which was to be accomplished through Aurora. Aurora in fact did acquire those assets, thus benefitting it. TAC, ¶¶ 32, 33, 129, 131. Finally, *O'Melveny & Meyers* was decided on a summary judgment motion, whereas here the Court merely is testing the adequacy of a pleading. Whether the knowledge of individuals like Seys can be imputed to Aurora depends on fact-intensive issues, including whether Seys was in fact intending to benefit Aurora, as is alleged. All of the above factors demonstrate that for pleading purposes the TAC is adequate.

## D. *Damages Resulting From the Alleged Fraud*

### 1. *General Allegation of Damages*

■ Defendants argue that plaintiff is barred from establishing that their alleged fraud caused him any damage because defendants' bids for the bond portfolio and the insurance business provided "fair value." However, although Defendants' evidence does indeed suggest that from an economic standpoint their bids provided "fair value," that does not necessarily preclude the Commissioner from proving he was injured (such as by not recovering a premium over that amount). Moreover, however difficult it may be for the Commissioner to prove it, he has in fact alleged that "[h]ad the bond portfolio not been sold to Altus in March 1992, the portfolio would have been managed by the Commissioner, transferred to other bidders, or otherwise disposed of in a manner that would have resulted in substantially greater profits to the ELIC estate and a higher recovery by the ELIC estate and the policyholders." TAC, ¶ 45. The Commissioner further alleges that "[h]ad ELIC's insurance business not been sold to the MAAF syndicate, the assets would have been managed by the Commissioner, transferred to other bidders or otherwise disposed of in a manner that would have resulted in profits to the ELIC estate and a higher return to the ELIC estate and policyholders." TAC, ¶ 58. Although these damage allegations do not reveal the Commissioner's exact theory of damages they are nonetheless sufficient.

### 2. *Lost Profits and Rescission*

■ Defendants argue that Cal. Civil Code § 3343 sets forth the exclusive remedies for fraud damages. Relying on *Channell v. Anthony*, 58 Cal.App.3d 290, 129 Cal.Rptr. 704 (1976), they contend that the

Commissioner cannot recover the profits he allegedly lost under § 3343(a)(3), because he supposedly elected to abandon any claim for rescission. (*See* page 2 above and § 86 of the TAC.)

In *Channell,* a hapless couple was defrauded into selling their farm, pursuant to a contract which permitted them to live on and use the property. In their lawsuit the defrauded victims-sellers recognized that title to their farm had passed to the fraudulent buyers and proceeded under that view. Moreover, they actually "elected to dismiss" a cause of action for rescission. The Court of Appeal construed this "election" to preclude the sellers from any right "to any gains or profits which the property might earn, except as created by contract" *Id.* at 720. The Commissioner now proclaims vigorously that he has *not* abandoned a claim for rescission, much less the right to it. The argument that he did not forego rescission in his pleadings is unpersuasive. Paragraph 86 of the TAC and the Commissioner's statement in his opposition to Aurora's previous motion to dismiss belie it. *See Bernstein* Decl.Exh. V, p. 5(360) and p. 11(366). The Commissioner's elected position and official responsibilities do not entitle him to assert flagrantly inconsistent positions, and it is unacceptable for him to do so. For these reasons, and also in light of the utter impracticality of conventional rescission, the Court will not read a claim for rescission into the TAC nor permit recovery based on that theory.

█ Notwithstanding this conclusion, however, it is *not* correct to equate the Commissioner's position with that of the plaintiffs-sellers in *Channell.* Unlike them, he did not explicitly withdraw any rescission claim, at least not one that previously had been filed against the Aurora parties. In addition, even the *Channell* court noted that

> In each case in which a seller of property is defrauded by a buyer, the trial court will have to examine the circumstances of the particular case and decide whether the questioned portions of section 3343 do or do not apply.

*Id.* at 317, 129 Cal.Rptr. 704. To prevent the Commissioner from pursuing the full range of fraud damages would exalt technicalities over the potentially overriding importance of redressing a great harm to the public interest allegedly committed by sophisticated, powerful entities. This the Court will not do.[7]

### E. *Restitution*

#### 1. *From the Artemis Parties*

█ In several causes of action against all defendants, asserting an involuntary trust, unjust enrichment, money had and received and violations of California's Unfair Competition Law (numbers 6, 7, 8 and 10, respectively), the Commissioner seeks (among other remedies) restitution, consisting of the value of the bond portfolio, the proceeds of those bonds, the value of the insurance business and all profits and dividends generated by the insurance business. Defendants argue that these are "quasi-contract" remedies not available where, as here, the plaintiff seeks to enforce an existing contract between the parties.[8]

---

7. This ruling need not and would not result in a so-called "double recovery." See fn. 5.

8. The Commissioner has acknowledged that he received several billion dollars for the bond portfolio, a substantial capital infusion from Aurora for the insurance business and a continuing interest in the profits of the insurance business. Even as late as the hearing on these motions, the Commissioner was vague and evasive as to whether he is prepared to and willing to return the amounts paid by the defendants. The Court construes the Commissioner's shifting position to be that he intends to keep the consideration he already received and is in a position to receive in the future (*i.e.,* insurance profits).

Defendants cite a number of cases that state that unjust enrichment is an action in quasi-contract that does not lie when an enforceable, binding agreement exists defining the rights of the parties. *E.g., Paracor Finance, Inc. v. General Electric Capital Corp.,* 96 F.3d 1151, 1167 (9th Cir.1996); *Lance Camper Mfg. Corp. v. Republic Indemnity Co. of America,* 44 Cal.App.4th 194, 51 Cal.Rptr.2d 622, 628 (1996). *But see, R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n,* 913 F.Supp. 1031, 1043 (N.D.Ohio 1996) (allowing a plaintiff, under Ohio law, to seek recovery for unjust enrichment on a claim within "the parameters of the contract" when there is an allegation of fraud or bad faith).

To avoid the application of this doctrine, the Commissioner relies primarily on *Ward v. Taggart,* 51 Cal.2d 736, 742, 336 P.2d 534 (1959). In *Ward,* as here, the complaint pled an action for fraud, not breach of contract. The Supreme Court found that the plaintiff could not prove an "out-of-pocket loss" because the property he purchased was worth what he paid for it, but the Court declined to limit plaintiff to a recovery only under Civil Code § 3343. Instead, citing "the public policy of this state [which] does not permit one to 'take advantage of his own wrong' (Civ. Code § 3517)," *Id.* at 741, 336 P.2d 534, the court permitted the plaintiff-buyer to recover the defendant-broker's secret profit, by providing a "quasi-contractual remedy to prevent one from being unjustly enriched at the expense of another...." *Id.* Defendants correctly distinguish *Ward v. Taggart* on its facts: unlike this case, in *Ward* there was no contract between the parties and the plaintiff did not indicate an intention to avoid rescinding any contract. Nevertheless, the policy considerations in *Ward v. Taggart* and the factors discussed above in section I(B) lead this Court to conclude that at this stage plaintiff should be, and is, permitted to seek a restitution-

ary remedy from the Artemis Parties, under Civil Code § 3343(b)(2).

**2.** *From the Aurora Parties*

**a.** *Bond Profits*

█ The Commissioner has agreed not to seek restitution of the bond profits from Aurora, which neither purchased the bonds nor received any bond profits. At the hearing, counsel for the MAAF defendants asserted that the Commissioner may not obtain such restitution from those parties, for the same reason: they neither purchased the bonds nor realized any profits. The Commissioner's counsel disputed that assertion. Given that there is a factual dispute and that the Court finds that in general the Commissioner is not precluded from seeking restitution, he is not foreclosed from seeking it against the MAAF parties.

**b.** *Profits From the Insurance Business*

█ At the hearing the Commissioner's counsel stated that—contrary to Aurora's contention—he has *not* insisted that Aurora continue to manage the insurance portfolio while at the same time seeking restitution of all the profits Aurora thereby derives. Aurora claims that he is doing just that and to prevent the Commissioner from such recovery it relies on *Wills v. Porter,* 132 Cal. 516, 64 P. 896 (1901). That case is old and it is difficult to discern its precise holding. But what the *Wills* court noted is still good law: it would be "clearly inequitable" for a defendant to be compelled to return the money he obtained pursuant to an agreement while at the same require him to continue to perform under that agreement (in that case, to remain guarantor of the corporation's debt). Aurora has submitted strong evidence that the Commissioner has not only accepted, but insisted on, Aurora's continu-

ing performance under the Agreement of Purchase and Sale. This Court will not permit the Commissioner to obtain restitution of profits Aurora earned during the period (if any) after Aurora was indeed forced to carry on; it would be inequitable to do so. But on a motion to dismiss, the Court need not and should not make that determination. Whether restitution from Aurora would be an equitable remedy to which the Commissioner would be entitled under Civil Code § 3343(b)(2) is an issue that the Court will address after all the evidence has been adduced.

## III.

### CONCLUSION

For the foregoing reasons, the Court DENIES the motions to dismiss in part, and GRANTS defendants' motions in the following respects: the Commissioner may not seek restitution of bond profits from Aurora and the Commissioner's claims for rescission are prohibited.

The Court believes this Order provides the parties with sufficient clarity to enable them all to proceed on the basis of the TAC. No further amended complaint is necessary. The Court will be strongly disinclined to grant any future motions to amend. The Commissioner, however, should take to heart the Court's comments at the hearing and in this Order concerning both the need for him to display consistency and the benefit to all parties of him clearly articulating just what he seeks from which defendant and on what basis.

Given that defendants have been aware of the allegations in the TAC for months, they shall answer or otherwise respond within 20 days of this Order. The Court cautions against seeking extensions.

IT IS SO ORDERED.