[Sac. No. 2214.    Department One.—September 28, 1916.]

## MARY S. LUPTON, Respondent, v. DOMESTIC UTILITIES MANUFACTURING COMPANY (a Corporation), et al., Appellants.

RESCISSION — CONTRACT OF SALE — FRAUD — TENDER OR OFFER TO RETURN.—In an action by the purchaser for the rescission of a contract for the purchase of a certain agent's contract and a quantity of washing machines, to cancel a promissory note given in payment thereof, and to obtain the reconveyance of certain real property given as security for the note, on the ground of false and fraudulent representations by which the plaintiff was induced to enter into the contract, proof that the plaintiff, prior to the commencement of the action, had tendered or offered to return the washers, as to which the right of possession had passed to the plaintiff, is essential to the establishment of the cause of action.

ID.—IMPOSSIBILITY OF RETURN—TRANSFER TO THIRD PERSON AT SELLER'S SUGGESTION.—The necessity of such a tender or offer to return is not excused by the circumstance that the plaintiff, at the mere suggestion of the seller, but without the employment of any fraudulent means by him, had transferred the title and right of possession to the washers to a third person not a party to the action.

ID.—REMEDY OF DEFRAUDED BUYER AFTER SALE OF GOODS.—As a general rule a buyer cannot rescind if he has sold the goods or any part thereof. In such a case he must affirm the contract and claim compensation or damages for the injury he has sustained by reason of the fraud.

NONSUIT—CONSIDERATION OF EVIDENCE ON MOTION.—In passing upon a motion for a nonsuit, the evidence must be interpreted most strongly against the defendant, and every favorable inference of fact that can be legitimately drawn in support of the action should be made.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

G. M. Steele, and R. W. Kemp, for Appellants.

L. S. Channell, H. R. McNoble, Ben Berry, Warren H. Atherton, Lawrence Edwards, and M. E. Haggerty, for Respondent.

LAWLOR, J.—This is an action for the rescission of a contract for the purchase of a certain agent's contract and a quantity of washing machines, to cancel a promissory note given in payment thereof, and to obtain the reconveyance of certain real property given as security for the note. The relief is sought principally upon the ground of false and fraudulent representations by which the plaintiff was induced to enter into the contract. The defendants, excepting the Domestic Utilities Manufacturing Company, which was not served with summons, answered denying the fraud and the other material allegations of the complaint, and at the trial, after the close of the plaintiff's case, moved for a nonsuit, which was denied. Judgment was rendered for the plaintiff as prayed. The defendants appeal from the judgment, alleging as error, among other things, the refusal of the court to order a nonsuit. An appeal is also taken from the order, denying the motion for a new trial.

The alleged false and fraudulent representations, and the general operations of the defendant company and its agents in their efforts to dispose of the "tin vacuum clothes washers or clothes pounders," and certain "so called 'valuable' Agent's Contracts," which the plaintiff was induced to buy, are substantially similar and in many respects identical with the frauds shown in the case of *Brown* v. *Domestic Utilities Manufacturing Company*, 172 Cal. 733, [159 Pac. 163]. In considering that case this court declared the frauds established by the evidence to be "so gross that equity would lend all of its legitimate powers to relieve plaintiff from the effects of them." We must be no less vigilant here. It appears from the record that there was an exhaustive inquiry into the merits of the case. The evidence is full and complete and convinces us that the entire scheme of the company is founded in fraud. The tenor of the circulars distributed at its instance, the spurious methods employed in the demonstrations, and the studiously drawn form of contract, all reveal a plan of the company for the alleged disposal of its wares which involves fraud in its every aspect—contemplating an endless chain of victims, each one in turn to recoup his own loss and make a profit by victimizing others. This is the meaning which must be attached to what is termed in the company's form of contract "the line of succession," especially when studied in the light of the evidence. For

instance, William Lupton, one of the plaintiff's witnesses, testified: "Mr. Ensminger told me like this: I said it looks like a kind of a skin game; he said you skin this man, he skins the other one, and he has then to skin the other one; there would be nobody hurt only the last man; he says, what is that to us, he says, we may be under the ground at that time." But it will not be necessary to enumerate in detail the particulars wherein it appears that the plaintiff was defrauded. It is sufficient to state that the court found that plaintiff, who "is a woman ignorant of business and its methods," became interested in the sale of the "tin vacuum clothes washers or clothes pounders," and the "so called 'valuable' Agent's Contracts," issued and sold by the Domestic Utilities Manufacturing Company; that she had various conversations with the defendants Ensmingers, who represented the company as its agents, in regard to the efficiency and value of the washers, and the advisability of investing her money in the venture; that she was also encouraged by the Ensmingers to attend certain public demonstrations, held under the auspices of the company, as to "the manner in which it was claimed said tin vacuum clothes washers or clothes pounders would wash all articles generally found in a general family wash as thoroughly and as quickly as the articles the said demonstrators, so called, used for their demonstrations"; that, as a matter of fact, such demonstrations were "false and fake demonstrations, and were not in good faith"; that at these demonstrations large wall charts were used in order to explain the manner in which an investment in the washers and an agent's contract would realize large and profitable returns; that these representations made "as to the ability of the plaintiff to make large sums of money greatly to exceed her original investment, were highly colored and distorted by reference to 'prospects,' 'lines of succession,' 'deals to be turned,' 'new territory to be opened,' 'transfers of bills of goods,' " all of which "were designed to prey upon the ignorance of the plaintiff, were false, and were made in a manner fitted to deceive plaintiff"; that plaintiff, believing and relying upon what was told her, purchased of defendants Ensmingers, as agents of the company, one of the agent's contracts and 1,667 washers, with the privilege of appointing other agents, transferring to them the washers she had purchased, and receiving certain com-

missions therefor; that in payment for these alleged privileges the plaintiff gave her promissory note in the sum of five thousand dollars, and executed a deed of trust to a certain house and lot to the defendants Sam H. Zimmerman and William Siegalkoff, as trustees, which property was of the value of about eight thousand dollars. As above stated, it is to cancel this note and to regain the property given as security that plaintiff brings this action.

The court also found that the agent's contract, in fact, "is and was valueless and worth nothing to the plaintiff or to any one else," while the "tin vacuum clothes washers or clothes pounders are of no value for the doing of general family washing or for any other purpose."

These findings are attacked upon the ground that the evidence is insufficient to sustain them. It is also contended that the judgment is erroneous because the representations made were merely matters of opinion; that, in any event, plaintiff was not entitled to relief for the reason that she had failed to investigate the truth of the representations; and that she had no right to rely upon the statements made by the defendants as they did not occupy confidential relations with her, were interested parties, and had only recently invested in the business themselves. We have carefully examined all these contentions, and the evidence appertaining thereto, and find they have no merit. The representations, for the most part, were more than mere matters of opinion, and were made in such positive terms that the plaintiff was justified in relying upon them without making an independent investigation.

We must, however, reverse the judgment on the ground that the plaintiff failed to effect a rescission of the contract prior to the commencement of the action. This was one of the grounds of the motion for a nonsuit. The other grounds were that the testimony of the plaintiff showed that she had waived the fraud after discovering the facts which entitled her to rescind, and that she was guilty of *laches* in not having used reasonable diligence in rescinding promptly upon becoming aware of her right of rescission. In our opinion, there is no force to either of these contentions. The sole question to be determined, therefore, is whether the "notice, tender and demand," which the plaintiff served upon the defendants, was sufficient to constitute a proper

rescission of the contract and entitle her to the relief she seeks. The defendants contend that it was not, for the reason that she did not tender or offer to return the 1,667 washers, but, on the contrary, had conveyed the title thereto to her husband. As regards the other portions of the contract, it is not questioned that her notice of rescission and demand was sufficient.

It was found by the court: "That upon the discovery by plaintiff of the falseness of said representations and of her right of rescission, and prior to the commencement of this action, said plaintiff elected to rescind her contract for the purchase of said so called 'valuable' Agent's Contract, and the 1,667 tin vacuum clothes washers or clothes pounders therewith and served a notice of her election to rescind upon said defendants, Ensmingers, and offered to return to said Domestic Utilities Manufacturing Company, a corporation, and Josie A. Ensminger and John W. Ensminger, said so-called Agent's Contract and all rights that plaintiff herein had in and to the same, or the territory mentioned in the same, or the rights to create agencies or any other right conferred by said so called Agent's Contract; that she did not tender a return of the 1,667 vacuum clothes washers above mentioned, because she never received the same; that said notice of election to rescind and tender of return also contained a demand upon said defendants, Ensmingers, that they surrender to plaintiff said promissory note, and reconvey or cause said defendants' trustees, to reconvey to plaintiff the said real property so conveyed by deed of trust, but they, and each of them, refused so to do." This finding corresponds with the language used in the notice of rescission— "With this Notice, Tender and Demand there is no delivery to you or any of you of any vacuum clothes washers as none have been received by the undersigned." It cannot be disputed that plaintiff never received actual possession of the 1,667 washers, or any of them. The evidence shows, however, that upon the close of her deal with the Ensmingers she was given credit upon the company's books for the washers, and the entire quantity was crated and set aside in its warehouse at Los Angeles subject to her disposal. It is admitted by plaintiff's counsel, as indeed it must be, that the defendants actually sold to her the 1,667 washers which became her property, and that she had the right to the pos-

session thereof. In the absence of other circumstances, it would therefore have been necessary for the plaintiff, in order to accomplish a rescission of the contract of sale, to have abandoned or offered to restore to the defendants everything of value which she had received under the contract. (Civ. Code, sec. 1691.) This is a familiar principle of equity. When one has a right of rescission and exercises that right he must restore the other party to the same condition that he would have been in if no contract had been made. As is said in *Collins* v. *Townsend,* 58 Cal. 608, 615, "If the vendor has retained possession of the property sold, as security or otherwise, the purchaser may indicate his intention to rescind and notify the seller that he abandons all right or claim to the property. If he fails to do this under such circumstances he is equally at fault as if, having received the property, he should refuse or neglect to return or tender it." (Approved in *Kelley* v. *Owens,* 120 Cal. 500, [52 Pac. 797].)

But at the trial plaintiff attempted to justify her action in having failed to abandon all claim or right to the washers by introducing evidence to show that the Ensmingers had induced her to transfer all the washers to her husband, William Lupton, and that he still retained title and right of possession, and for that reason the plaintiff had no power to restore the washers or the title thereof to the defendants. The findings of the court on this point are as follows: "That on or about the 15th day of April, 1912, plaintiff transferred all her right, title, and interest in and to said 1667 washers, which she was entitled to receive with said agent's contract purchased from Josie A. Ensminger, to William Lupton without any consideration whatever, and at the special instance and request of defendants Ensmingers and upon their representations to plaintiff that that was the proper course to pursue in order to make the most money from said so-called valuable Agent's Contract. That defendants Ensmingers induced plaintiff to make said transfer to William Lupton, and defendants Ensmingers made said representations and induced said transfer as a part of the scheme to injure and destroy plaintiff's right to rescission and to prevent plaintiff from escaping from the fraud which they, defendants Ensmingers, had perpetrated against plaintiff."

The rule is well established that, in passing upon a motion for a nonsuit, the evidence must be interpreted most strongly

against the defendant, and every favorable inference of fact that can be legitimately drawn in support of the action should be made. (*O'Connor* v. *Mennie*, 169 Cal. 217, [146 Pac. 674]; *Boyle* v. *Coast Improvement Co.*, 27 Cal. App. 714, [151 Pac. 25].) But we are unable to find in the evidence any indication that defendants induced the transfer of the washers to Lupton through misrepresentations or other fraudulent means. There is testimony to the effect that, during the negotiations with the plaintiff, John W. Ensminger suggested to her that such a transfer should be made, giving as a reason therefor that, because of her husband's personality and wide, worldly experience, he would make a better agent in the field. Neither of the Luptons was very well fitted for the business, but it does not appear that the reasons advanced by Ensminger were false. Notwithstanding the sinister motives which may be imputed to the Ensmingers in advising such an arrangement, it can scarcely be said that plaintiff was induced to make the transfer on account of any frauds practiced upon her. Evil motives alone do not constitute fraud. Her husband's conduct in the premises, it is true, is not above question. The evidence tends to show that while she was contemplating the purchase of the contract and washers, he was apparently acting in conjunction with the Ensmingers to induce her to enter into the contract so that he would be appointed agent. He admittedly knew of the fraudulent character of the operations which were then being carried on by the company and the Ensmingers. His testimony, in this behalf, is significant: "Well, my wife didn't know anything about it. All I knew about it was from what Mr. Ensminger and several of the others had told me, that there was really no harm in it, because the very first time the next man you had skinned got a chance to skin another man he played even, and then if he got another opportunity he made a percentage." Regarding the promissory note he had given his wife in exchange for the contract and the washers, he testified: "I did not expect to pay that note; just gave it to fulfill the contract and make the company believe that I had paid value." But there is no suggestion in the evidence, nor is it contended, that Lupton acted as agent for the Ensmingers, or that he resorted to fraudulent methods, or exerted any undue influence upon the plaintiff, to induce his appointment as agent and the transfer of the washers which was incidental to such appointment. As

testified by plaintiff: "He said he .thought it was a good. thing. If he couldn't get one, he would go in with somebody else. He said when I concluded to buy it that I could use my own pleasure about it. He didn't say not to buy it because whenever I talk of doing anything that way he doesn't tell me not to do anything." It cannot be held under such circumstances that the husband's possession must, in the eyes of the law, be regarded as the possession of the Ensmingers. Nor can it be said that the washers were valueless and worth nothing to the extent that it was not necessary to return them in order to accomplish a rescission. While the evidence as to the actual value is conflicting, and shows conclusively that they were not as valuable as represented, it cannot be questioned that they were of substantial value.

Conceding that the evidence amply supports the finding that it was upon the advice of Ensminger, and at his special instance, that the transfer was made, we are unable to see how this circumstance, alone, excuses the failure of the plaintiff to make a complete rescission. None of the cases relied upon by plaintiff is opposed to this conclusion. While certain language, in several of the authorities referred to, is to the effect that a rescission by the buyer of an executed contract of sale induced by fraud cannot be defeated by the seller upon the ground that the buyer has parted with the possession of the property sold, when he parts with it upon the advice of the seller, in none of them, nor in any others that we have found, was a situation presented in which it was impossible to adjust the equities between all the parties. It is a general rule that a buyer cannot rescind if he has sold the goods or any part thereof. (35 Cyc. 147.) In such a case he must affirm the contract and claim compensation or damages for the injury he has sustained by reason of the fraud. "The rule is well settled, that where the party complaining has parted with the thing purchased, he cannot rescind, but must resort to an action for damages." (*Bailey* v. *Fox*, 78 Cal. 389, [20 Pac. 868].) This principle rests upon the doctrine that equity will not relieve where it is utterly impossible to place all the parties in *statu quo*. That is precisely the situation presented in this case. William Lupton, who it cannot be questioned holds the title to the washers, is not a party to the action. If the plaintiff should be granted judgment as prayed, her note to the defendants would be canceled, and she

would be entitled to recover from them the realty which she gave as security. But Lupton, her husband, would still retain the property in the 1,667 washers, and the right to demand immediate possession at any time. Moreover, the plaintiff would retain the note which the evidence shows she received from Lupton as the price of the agent's contract and washers. In this aspect it matters not that Lupton had neither the ability nor the intention to pay the note, or that under the circumstances of the transaction it was apparent to the court that it amounted to no consideration whatever. As long as it remained uncanceled and in the hands of the plaintiff it constituted a chose in action against William Lupton. Potentially, at least, it represented a sum of five thousand dollars— the face value of the note. It requires no extended argument to show that a judgment in plaintiff's favor would be inequitable, and fall short of restoring the parties to the *statu quo*. Were Lupton a party to the suit, or were the situation of the parties such that he could be regarded merely as an agent for the plaintiff, having no other interest, the trial court might have been enabled to adjust the equities between the parties, and, if it had not done so, this court might have afforded relief. But as the case was presented to the lower court there was no showing by the plaintiff of a complete restitution of the property, or any means by which the court could relieve her of the omission. Accordingly, the motion for nonsuit should have been granted.

Judgment and order reversed.

Shaw, J., and Sloss, J., concurred.