[Civ. No. 2610.    Second Appellate District. Division One.—December 19, 1918.]

LOTTIE R. TAYLOR et al., Appellants, v. W. A. HAMMEL, Sheriff, etc., et al., Respondents.

FRAUD—RESCISSION—DUTY TO RESTORE—INEXCUSABLE DELAY.—An action to rescind contracts for the purchase of certain machines and to compel a reconveyance of certain real property given in part consideration is barred by the plaintiff's failure to offer to restore the machines received until more than a year after the discovery of the alleged fraud.

ID.—INABILITY TO RESTORE.—Where, in such case, restoration could not be made because the plaintiff had transferred the title of the property to a third party, the right to maintain an action for rescission was lost.

ID.—UNLAWFUL PURPOSE OF ORIGINAL CONTRACT—RELIEF BARRED.—If such contracts were mere shams or devices used by the defendants in the conduct of an "endless chain" of lottery frauds, and the plaintiffs at the time they accepted the contracts were aware of this ulterior purpose, a court of equity would not afford relief to either party, but would leave them where it found them.

APPEAL from two judgments of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

George L. Keefer for Appellants.

R. C. Noleman for Respondents.

MYERS, J., *pro tem.*—Plaintiffs appeal from two judgments dismissing their action as to defendants Hammel and Barrett and as to the Domestic Utilities Manufacturing Company, after orders sustaining the demurrers of said defendants to plaintiffs' complaint, plaintiffs having declined to amend.

The complaint is very long, somewhat involved, and contains various ambiguities and uncertainties, which, however, are not attacked by the demurrers. From it we gather the following facts: In August, 1910, plaintiffs received from the defendant corporation two certain contracts of sale for specified lots of so-called "vacuum clothes-washers." For one of these contracts plaintiffs paid the sum of $150; for the other they deeded to one of the defendants the real property described in the complaint. Plaintiffs were induced thereto by various false representations and devices so grossly fraudulent as to impel the courts to make every effort within the law to afford relief therefrom. The defendants Hammel and Barrett are in no way charged with actual participation in the frauds.

After receiving the contracts and parting with their property and before discovery of the fraud, plaintiffs were further induced by defendants to transfer to defendant Hellman (an agent of and co-conspirator with other defendants), their interest in the washers covered by the second contract, and

accepted in exchange therefor a conveyance from Hellman of certain other real property.

On November 4, 1910, the property which had been theretofore conveyed by plaintiffs was mortgaged to defendant Barrett, who thereafter foreclosed, became the purchaser at the sale thereunder, and eventually received a sheriff's deed pursuant thereto. Defendant Hammel's only connection with the case was through acting as sheriff in making the sale under foreclosure and executing the sheriff's deed.

Plaintiffs discovered the fraud on or about November 4, 1910, and immediately commenced an action in the superior court to rescind their various transactions with defendants. They did not, however, restore or offer to restore to defendants anything which they had received as the fruits of said transactions. Thereafter, on December 6, 1911, they tendered to defendants the washers which they had received under the first contract, and then dismissed their action and filed two new actions for the same purpose. On December 11, 1911, plaintiffs quitclaimed back to defendant Hellman the real property they had received from her. On March 21, 1912, plaintiffs delivered back to defendants the contracts which they had received from them, together with a relinquishment of all their rights and claims thereunder. They then dismissed their two actions then pending and filed two new ones for the same purpose. These were later dismissed at the time of filing the present suit, April 14, 1914. The prayer in this action is for the cancellation of plaintiffs' deed to defendants, the mesne conveyances, the sheriff's deed to Barrett, and for general relief.

The gist and substance of the relief here sought is a rescission of plaintiff's contracts with defendants and the restoration of plaintiff's property. We are, therefore, constrained to the conclusion that this case is ruled by the case of *Brown* v. *Domestic Utilities Mfg. Co.*, 172 Cal. 733, [159 Pac. 163], and that the plaintiffs must be denied relief because of their failure to act with the promptness and diligence which the law requires of those who seek to avail themselves of this equitable remedy. As this court said in that case: "The failure of the plaintiffs to act promptly upon discovery of the fraud is fatal to an action to enforce rescission." A party seeking to rescind must do two things with "reasonable diligence." He must give prompt notice of his election to rescind

the contract, and he must restore or offer to restore everything of value which he has received thereunder. (Civ. Code, sec. 1691.) In the case cited the plaintiffs had received nothing of value, and were, therefore, relieved from the second of these requirements, but they were none the less required to act promptly in giving notice of their election to rescind. In the instant case they gave prompt notice of their election to rescind by commencing an action therefor, but they wholly failed to comply with the second requirement, viz., to make restoration. Plaintiffs had received delivery of 50 washers under the first contract, and had taken title to 1,667 washers under the second contract. These articles admittedly possessed some substantial value; yet the plaintiffs made no offer to restore them until more than a year after discovery of the fraud. In fact, they could not restore the title to the 1,667 washers, because they had already transferred it to defendant Hellman. Such a situation has been held a complete bar to an action for rescission. (*Bailey* v. *Fox,* 78 Cal. 389, 397, [20 Pac. 868]; *Kelley* v. *Owens,* 120 Cal. 502, 512, [47 Pac. 369, 52 Pac. 797].) Under the circumstances of this case, it might be held a sufficient compliance if plaintiffs had offered to reconvey the real property which they had received from Hellman in exchange for the washers; but even this they did not do until more than a year had elapsed.

It is alleged in the complaint that the contracts in question were never intended by the defendants to be performed according to their terms; that they were mere shams, designed and used by the defendants as devices in the conduct of a so-called "endless chain" lottery fraud; and that they were therefore absolutely void. It does not clearly appear whether or not at the time plaintiffs accepted the contracts they were aware of this ulterior purpose. If they were, and shared in it, it follows that the contracts were void as against public policy. In such case it would also follow that a court would not afford relief to either of the parties to such contracts, but would leave them where it found them. (*Berka* v. *Woodward,* 125 Cal. 119, [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777]; *Martin* v. *Wade,* 37 Cal. 168.) On the other hand, if plaintiffs were innocent of this unlawful purpose, then it follows that the contracts, which were fair upon their face, and imported legal rights and obligations in favor of the plaintiffs, were enforceable by them as against the defendants, or

were voidable by them at their election. But it also follows that, in order to avoid such contracts, plaintiffs must rescind in the manner prescribed by law, and this, as we have seen, they failed to do.

To excuse their failure in not offering to restore what they had received as the fruits of these contracts, plaintiffs allege that they were not aware of the necessity for so doing. This cannot be regarded as a valid excuse. Parties seeking to avail themselves of the remedy afforded by this chapter of the code are chargeable with notice of the requirements thereof. The plaintiffs must be held to have known that "one cannot eat his pudding and have it."

The conclusion we have reached upon the questions here discussed renders it unnecessary to consider the questions arising under the statutes of limitations and the question of the rights of a mortgagee without actual notice as against parties in possession of the premises mortgaged.

The judgments appealed from are affirmed.

Conrey, P. J., and James, J., concurred.