[Civ. No. 4369. Second Appellate District, Division One.—March 10, 1925.]

MARTHA ZELLER (a Single Woman), Appellant, v. J. R. MILLIGAN et al., Respondents.

[1] RESCISSION—MODE.—When the right to rescind exists, section 1691 of the Civil Code prescribes the mode of rescission which must be pursued.

[2] ID.—SALE OF HOTEL—FRAUD—MISREPRESENTATIONS AS TO COL-LATERAL SECURING PURCHASE PRICE—NOTICE.—Where a person sells his interest in the equity in a hotel, taking in part payment a promissory note of the purchaser secured by certain collateral other than the interest sold, which collateral is represented as having a specified value, subsequent notice to said vendor that the value of such collateral was misrepresented to him and that part of such security has faded does not charge him with notice that certain representations with reference to the operation of the hotel at a loss, and which induced him to enter into the transaction

1. Rescission of contract, when, how and by whom made, notes, 50 Am. Dec. 672; 74 Am. Dec. 657.

by which he sold his interest in the hotel, were false and fraudulent.

[3] ID.—RELATION OF KNOWN FACTS TO ULTIMATE KNOWLEDGE—DUTY TO MAKE INQUIRY.—The knowledge which one obtains and the possession of which is urged as being sufficient to require further inquiry by such person must be directly related to the ultimate knowledge in question, or the known facts must be such that to a person of ordinary care and prudence further inquiry would not only be suggested but imperatively demanded, to the end that the truth with reference to the main fact may be disclosed, and the circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.

[4] ID. — MISSTATEMENT OF MATERIAL FACT — DISTRUST OF OTHER STATEMENTS.—One who deliberately makes a misstatement as to one material fact affecting a transaction should be distrusted as to any and all other material statements affecting the matter, and because of the distrust thus engendered the person interested in the truth of facts concerned in the transaction is put upon inquiry regarding every fact involved therein, that is to say, his suspicions having been aroused because of one misrepresentation, it becomes his bounden duty thoroughly to investigate as to every other representation which in any way had induced him to enter into the contract.

[5] ID.—NOTICE—OFFER TO RESTORE—PLEADING—PROOF.—Ordinarily, in order that an action for rescission may be maintained, in the absence of circumstances excusing a preliminary notice of rescission and offer to restore to defendant everything of value received by the plaintiff, the complaint must contain an allegation, and the proof must show that such notice has been given and such offer to restore has been made.

[6] ID.—DISCOVERY OF FRAUD—IMMEDIATE INSTITUTION OF ACTION—NOTICE UNNECESSARY.—Where an action for the rescission of a contract for the sale of plaintiff's interest in the equity in a hotel is instituted on the day following the discovery by plaintiff of the alleged fraud which had been practiced upon her by the defendants, a formal notice of rescission on the same day would have given the defendants no information differing either in nature or extent from that contained in the allegations of the complaint; nor are defendants' rights in the premises in any manner changed

---

3. Rescission or cancellation of contract for negligent mistake of one party, note, Ann. Cas. 1913A, 432.

Equitable relief against contract for mistake due to negligence, notes, 5 Ann. Cas. 214; 11 Ann. Cas. 1164.

4. See 12 Cal. Jur. 763.

5. See 4 Cal. Jur. 763.

or prejudiced by reason of plaintiff's failure to give such notice, and under such circumstances no formal notice of rescission is necessary.

---

(1) 13 C. J., p. 616, n. 94, p. 620, n. 52.    (2) 13 C. J., p. 617, n. 5.    (3) 13 C. J., p. 617, n. 2.    (4) 13 C. J., p. 617, n. 2.    (5) 39 Cyc., p. 1397, n. 97, 99.    (6) 13 C. J., p. 618, n. 23.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

W. A. Sloane and Harrison G. Sloane for Appellant.

Leonard Wright and L. N. Turrentine for Respondents.

HOUSER, J.—Plaintiff appeals from a judgment "on the pleadings" in favor of defendants.

The suit purported to be for the rescission of a contract wherein an accounting was prayed as auxiliary relief.

The main controversy between the appellant and the respondents appears to be regarding two points, namely:

(1) Whether or not the attempted rescission of the contract was made by the plaintiff with sufficient promptness after discovery by plaintiff of the alleged fraud of the defendants; and

(2) Whether or not a notice of such rescission was given to the defendants, coupled with an offer to restore to defendants "everything of value" which plaintiff had received "under the contract."

The complaint filed in the action contains allegations in substance that plaintiff and defendant E. G. Norton were the owners (subject to a mortgage of approximately forty-eight thousand dollars) of a certain hotel property which, by arrangement between them, Norton was managing, and upon its sale was to share in the profits derived therefrom. It is alleged that said Norton and defendants J. R. and J. L. Milligan entered into a conspiracy for the purpose of defrauding plaintiff of the value of her interest in the equity of said property, to which end said Norton made to plaintiff certain false representations regarding the losses which said Norton stated were being sustained through the operation

of the hotel and which losses required an immediate sale of the property in order that anything of value might be saved to plaintiff and said Norton; that by reason of such false representations plaintiff entered into an agreement with said defendants to sell to them, and that she did sell to them, her interest in the equity in said property for the sum of six thousand dollars, payable two hundred dollars in cash and the balance of five thousand eight hundred dollars by a promissory note of E. G. Norton and his wife Daisy Norton, secured by a fourth mortgage on certain property, and certain trust deed notes of the purported value of five thousand dollars, which said defendants E. G. Norton and J. R. Milligan represented to plaintiff "were good and that the same were of the actual value of five thousand dollars; that said statements were made as representations of fact and were not given as opinions; that the said defendants further represented and stated that the same had always paid interest as called for under the terms thereof"; that believing in said statements and relying solely thereon, plaintiff accepted the promissory note of said defendants, together with said collateral security, in full consideration for her interest in the equity in the property involved, but that, as a matter of fact, the said trust deed notes were of no greater value than the sum of one hundred dollars, and that the fourth mortgage was thereafter rendered of no value by reason of the sale of the mortgaged property under a prior trust deed; "that the real facts concerning said promissory note and the said trust deed notes were not discovered by plaintiff until on or about May, 1922," at which time plaintiff "learned for the first time the true value of said collateral security," and at that time was informed that nothing had been paid upon the said trust deed notes and that no interest had been paid thereon; "that said plaintiff first learned of the fraud practiced upon her in misrepresenting the financial condition of said hotel and actual value of her equity therein, on or about the first day of August, 1922"; that defendant Norton never made any accounting to plaintiff of his dealings in the operation of said hotel from the eighth day of May, 1920, to the seventh day of May, 1921, and that he has received and converted profits of said business in the sum of one thousand dollars;

that between the seventh day of January, 1921, and the date of the commencement of the action, to wit, August 2, 1922, defendants Milligan received and converted profits from the said hotel business amounting to the sum of one thousand dollars; "that plaintiff is ready, able and willing and hereby offers to restore to the said defendants the said sum of two hundred dollars, the said promissory note and the said trust deed notes, as they may be respectively entitled to receive the same; that plaintiff further offers to do equity toward any other defendant herein concerned"; that on and after the tenth day of July, 1922, defendants Brock and Robinson were in the exclusive possession of the hotel, and on the first day of August, 1922, plaintiff informed said last-named defendants of her election to rescind her agreement whereby said defendants Milligan were alleged to have obtained their apparent interest therein, and that such attempted rescission was based upon the fraud of the said defendants Milligan and Norton; that upon a proper accounting from defendants Milligan and Norton plaintiff would be entitled to receive a greater amount than the value of the trust deed notes, together with the sum of two hundred dollars in cash; "that through the fraudulent concealment of said defendants plaintiff was unable, prior to the commencement of this action, to ascertain what amount or what property the said defendants are in equity entitled to receive upon rescission; that to her best information and belief said defendants are entitled to nothing and plaintiff is entitled to retain everything now in her possession in satisfaction of, or as security for the amounts due her by said defendants; that the said defendants Milligan and Norton, since on or about August, 1921, have asserted conflicting claims upon said . . . trust notes and plaintiff had no information prior to the commencement of this action as to which of said defendants, if either of them, were entitled to receive the same; that by the actions of said defendants as aforesaid, the circumstances attending rescission herein have been complicated and the terms of an equitable rescission can be determined only by a judicial examination thereof." It is further alleged that on or about the twenty-seventh day of February, 1922, the said defendants Milligan and Norton "failed and neglected to pay their indebtedness which was

secured by prior trust deed upon the real property mortgaged to this plaintiff as security for said note of five thousand eight hundred dollars; that thereupon, after due notice to said defendants, a sale was had by the trustee under such trust deed; . . . '' Also, that defendants Lillian Milligan, Nancy Milligan and Daisy Norton have no interest in the controversy ''except as the wives'' of the respective defendants Milligan and Norton.

The complaint also contains an allegation to the effect that any notice of rescission other than that given would have been an idle act; that none of the defendants suffered any injury or prejudice by reason of the delay in bringing the action. The action was commenced on August 2, 1922.

From the foregoing it will appear that the first intimation that plaintiff had of ''the true value of said collateral security'' was approximately three months before the action was commenced; and ''that said plaintiff first learned of the fraud practiced upon her in misrepresenting the financial condition of said hotel and actual value of her equity therein on or about the first day of August, 1922,'' which was the day before she instituted proceedings against defendants. In addition thereto, it should be noted that on February 27, 1922, which was several months prior to such ''discovery'' by plaintiff, defendants Milligan and Norton failed to pay their indebtedness which was secured by a prior trust deed upon the real property mortgaged to the plaintiff, and that said property was sold under foreclosure proceedings.

[1] When the right to rescind exists, section 1691 of the Civil Code prescribes the mode of rescission which must be pursued. It is as follows:

''Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

''1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

''2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such

party shall do likewise, unless the latter is unable or positively refuses to do so."

[2] It is urged by appellant that the discovery by her three months before the action was commenced of the true facts relating to the collateral security for the five thousand eight hundred dollars indebtedness of defendants on account of the purchase price of plaintiff's interest in the equity in the hotel was not such knowledge as is contemplated by the statute. Section 19 of the Civil Code provides that "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

The primary question, then, is whether or not by the failure of defendants Norton and Milligan to pay their indebtedness which was secured by a prior trust deed upon the real property mortgaged to plaintiff as security for their note to plaintiff in the sum of five thousand eight hundred dollars, resulting in a foreclosure as to plaintiff's and defendants' rights in such mortgaged property, coupled with the discovery by plaintiff in May, 1922, "of the real facts concerning said promissory note and the said trust deed notes," were sufficient circumstances to put her "upon inquiry as to the particular fact" that she had been defrauded in the transaction by which she sold to defendants Norton and Milligan the property in question.

As is said in the case of *Lady Washington Consolidated Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809] : "As the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts" (citing cases).

The difficulty encountered consists not so much in ascertaining the general rule applicable to the inquiry, but in its application to the facts of the case. [3] It is clear that the knowledge which one obtains and the possession of which is urged as being sufficient to require further inquiry by such person must be directly related to the ultimate

knowledge in question; or, the known facts must be such that to a person of ordinary care and prudence further inquiry would not only be suggested but imperatively demanded, to the end that the truth with reference to the main fact may be disclosed. "The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission." (*Tarke* v. *Bingham*, 123 Cal. 163, 166 [55 Pac. 759, 760].) To charge one with notice "the facts must be such as ordinarily to excite inquiry with reference to the particular fact which the inquiry is designed to elicit." (20 R. C. L. 350.)

In the case of *Wilkerson* v. *Thorp*, 128 Cal. 221, 224 [60 Pac. 679, 681], the court, in discussing the point here under consideration, uses the following language: "Constructive notice is a knowledge of such facts, that the party possessing such knowledge is conclusively presumed to know other things besides the facts which have been proven to have come to his knowledge. The information or knowledge of facts possessed by a party must be such that he is conclusively presumed to have notice of the main fact to which the constructive notice is invoked."

In the instant case the main fact was whether or not misrepresentation had been made regarding the financial losses in the operation of the hotel which were the inducement to plaintiff to enter into the contract of sale of her interest in the equity in the premises. The facts of which she acquired knowledge were, briefly, in substance that a part of the security for the payment to her of the consideration for the transfer of her interest had failed, and that statements made by defendants Norton and Milligan to the effect that all interest payments, in connection with the trust deed notes affecting their security for the said debt owing to plaintiff, had been made, were untrue. In other words, the alleged losses in the operation of the hotel were what induced plaintiff to sell, and the later knowledge which she obtained had entirely to do with the consideration which she was to receive for the sale of her interest.

[4] It may be said that one who would deliberately make a misstatement as to one material fact affecting a transaction should be distrusted as to any and all other material statements affecting the matter, and that because of

the distrust thus engendered the person interested in the truth of facts concerned in the transaction would be put upon inquiry regarding every fact involved therein; that is to say, his suspicions having been aroused because of one misrepresentation, it thereupon became his bounden duty thoroughly to investigate as to every other representation which in any way had induced the interested person to enter into the contract.

But the allegations of the complaint show that the representation as to the losses which were being sustained in the· operation of the hotel and the consequent inability of the owners to meet payments which would become due on the property were what actually led plaintiff to enter into the agreement for the sale of her interest in the equity. Misrepresentations by defendants with reference to the securities for the payment to plaintiff of the consideration for the transfer, while intimately connected with the transaction, were entirely distinct from any misrepresentation regarding the losses arising from the operation of the hotel. It follows that, in order to protect her rights in the premises, · plaintiff was not obliged to "rescind promptly" on the discovery by her of the fact relating to the payment of interest on the trust deed notes, or the fact that other security held by her had failed.

As heretofore stated, the only allegation with reference to the notice of rescission in substance is that plaintiff informed defendants Brock and Robinson, who were in possession of the property, "of her election to rescind her agreement whereby defendants Milligan obtained their apparent interest therein, and that said rescission was based upon the fraud of the said defendants Milligan and Norton."

[5] The general rule is that the act of rescission by one party to the agreement implies some notice to the other party thereto of an intention and determination to extinguish the contract. (*McGue* v. *Rommel,* 148 Cal. 539 [83 Pac. 1000], and cases therein cited; *Brown* v. *Domestic Utilities Mfg. Co.,* 172 Cal. 733 [159 Pac. 163].) Notwithstanding such rule, there are authorities to the effect that "the intention to repudiate sufficiently appears where the party seeking to rescind institutes against the other legal proceedings based upon a disaffirmance of the contract."

71 Cal. App.—40

(24 Am.) & Eng. Ency. of Law, 2d ed., p. 645, and cases cited.) In this state, however, in view of the many decisions affecting the general subject of rescission, there can be no doubt but that ordinarily, in order that the action may be maintained, in the absence of circumstances excusing a preliminary notice of rescission and offer to restore to defendant everything of value received by the plaintiff, the complaint must contain an allegation, and the proof must show, that such notice has been given and such offer to restore has been made. (*Kelley* v. *Owens,* 120 Cal. 502 [47 Pac. 369, 52 Pac. 797], where the authorities are reviewed; *Hammond* v. *Wallace,* 85 Cal. 531 [24 Pac. 837]; *Lupton* v. *Domestic Utilities Mfg. Co.,* 173 Cal. 415 [160 Pac. 241]; *Conlin* v. *Studebaker Brothers,* 175 Cal. 395 [165 Pac. 1009]; *Richards* v. *Farmers & Merchants' Bank,* 7 Cal. App. 387 [94 Pac. 393], where many authorities are cited; *Crouch* v. *Wilson,* 183 Cal. 576 [191 Pac. 916]; *Taylor* v. *Hammel,* 39 Cal. App. 205 [178 Pac. 547].)

In the leading case of *California F. & F. Co.* v. *Schiappa-Pietra,* 151 Cal. 732 [91 Pac. 593], the several exceptions to the general rule requiring a preliminary notice of rescission and offer to restore are stated, among which may be noted the following: (1) Where the plaintiff is entitled to retain that which he has received; (2) where the rights of the defendant can be fully protected by the decree, or where an accounting is necessary to determine the relative rights of the parties; (3) where, without any fault of the plaintiff, peculiar complications have arisen which make it impossible for plaintiff to offer full restoration.

It should be remembered that on a determination of the matter submitted to the trial court plaintiff was entitled to have taken at full face value each and every allegation contained in the complaint. With reference to the several exceptions just noted to the general rule requiring preliminary notice and offer to restore, an examination of the complaint shows that as to the first exception plaintiff is not only entitled to retain the two hundred dollars which she received on the sale of her interest in the equity of the hotel property, but also a considerable sum in addition thereto. As to the second exception, the rights of the plaintiff and the defendants regarding the executed instruments of the respective

parties could be fully protected by the decree; and, assuming the truthfulness of plaintiff's allegations, an accounting between plaintiff and each of defendants Norton and Milligan was necessary to determine their respective rights. Regarding the third exception, still assuming the facts to be in accordance with the allegations of the complaint, without any fault of the plaintiff, peculiar complications existed with reference to a settlement of the conflicting claims among the several defendants as to the ownership of the trust deed notes held by plaintiff as collateral security. Finally, by the complaint plaintiff asserted her willingness and ability on a determination of the suit to fully restore to defendants everything of value which she had received from them and to do equity in the premises.

[6] The instant action was commenced on the day following the discovery by plaintiff of the alleged fraud which had been practiced upon her by the defendants. The law abhors idle acts. A formal notice of rescission on the same day on which the suit was instituted would have given the defendants no information differing either in nature or extent from that contained in the allegations of the complaint; nor were defendants' rights in the premises in any manner changed or prejudiced by reason of the plaintiff's failure to give such notice.

Adopting the language used by the supreme court in the case of *California F. & F. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 742 [91 Pac. 593, 596], "We are therefore of the opinion that the circumstances shown by the complaint fully justify the failure of plaintiffs to offer to restore possession of the property before the commencement of the action, and bring the case within those classes of cases in which no such offer is necessary as a condition precedent to action."

The judgment is reversed.

Conrey, P. J., and Curtis, J., concurred.