[Civ. No. 6341. Second Appellate District, Division One.—March 18, 1929.]

B. C. STOCKWELL, Plaintiff, v. B. D. McALVAY et al., Defendants.

LULU S. LEE, Intervener and Appellant, v. V. E. STOCK-WELL et al., Respondents.

E. J. Miller for Appellant.

Newby & Newby and Newby & Palmer for Respondents.

CONREY, P. J.—B. C. Stockwell is the wife of V. E. Stockwell. In this action B. C. Stockwell, as plaintiff, filed her complaint against defendant B. D. McAlvay to quiet the title of the plaintiff in and to a certain parcel of land in the city of Los Angeles. She alleged that McAlvay claims some interest in said property by virtue of an execution levied thereon for the enforcement of a certain judgment against V. E. Stockwell; that the defendant Traeger, sheriff of Los Angeles County, having levied upon said real property under said execution, had advertised the property for sale, and, unless restrained by order of court, would sell said property as the property of V. E. Stockwell, judgment debtor. Plaintiff prayed that her title be quieted against defendants, and that the sheriff be enjoined from proceeding further with said execution sale.

The defendants McAlvay and Traeger by answer alleged that said real property was, at all the times mentioned in the complaint, as well as at the time of the answer, the property of said V. E. Stockwell, and further set up facts showing an existing judgment, an execution levy made against said real property, and that the judgment, execution and levy constituted a valid lien upon said property of V. E. Stockwell. The said McAlvay, in addition to his answer, filed a cross-complaint against both the Stockwells and against R. P. Greenleaf and the Citizens Trust and Savings Bank of Los Angeles, whereby cross-complainant sought to bring in said additional parties, and to establish the validity and priority of his said judgment lien. An answer to the cross-complaint was filed by the two Stockwells and Greenleaf on November 5, 1925. Certain amendments to these pleadings were later filed, which do not require further consideration.

On the twenty-third day of January, 1926, Lulu S. Lee, having first obtained an order permitting her so to do, filed a complaint in intervention in said action. To this complaint the defendants B. C. Stockwell and V. E. Stockwell demurred on various grounds; which demurrer was on February 23, 1926, sustained without leave to amend. Thereafter the court vacated that portion of its order denying leave to amend, and permitted the intervener to submit for its consideration an amended complaint in intervention. Thereupon "a proposed amended complaint in intervention

having been submitted, and the court having considered the same, leave to file said amended complaint in intervention by Lulu S. Lee is denied, and it is now ordered that the demurrer to the complaint in intervention be sustained without leave to amend.'' This was followed by an order or judgment dismissing the complaint in intervention. From this order or judgment the intervener appeals.

The demurrer to the first complaint in intervention was properly sustained. Without deciding that the pleading failed to state any cause of action, it suffices to say that said complaint was full of uncertainties, some of which were covered by the demurrer. The judgment of dismissal properly followed, unless the court's rejection of the proposed amended complaint was in itself an abuse of discretion. To determine this question we have examined the proposed amended complaint in intervention.

Instead of a concise and clear statement of facts, the proposed complaint is a long and rambling story. It does allege, however, that in March, 1922, intervener was the owner of the real property described in plaintiff's complaint, and certain valuable household furniture, etc., contained therein; that V. E. Stockwell stated to intervener that Mrs. Greenleaf was the owner of certain property, both real and personal, which she would exchange for intervener's property; that Stockwell stated that he was the agent of Mrs. Greenleaf, but that he would also act as agent of intervener, and would charge her a commission of two hundred dollars for the service; that in fact Stockwell was the real owner of the so-called Greenleaf properties and was secretly acting for himself and not for Greenleaf; that Stockwell represented that the Greenleaf properties were of certain stated values, which in fact, as to some of the items, were worth substantially less than the amounts represented in the Stockwell statements; that at the time of the consummation of the transaction of exchange Stockwell refused to complete that transaction unless intervener would include, in the transfers by her, certain personal property not included in the original agreement of exchange, or else pay a stated amount for the privilege of retaining said personal belongings; that by reason of intervener's embarrassed financial condition at the time, she yielded to said demands; that thereafter intervener was compelled to and did sell certain of the properties conveyed

to her by Greenleaf, for stated sums much less than the values which had been fixed in the statements made to intervener by Stockwell. It is further stated that at the time of the conveyance of intervener's property to Greenleaf, the Stockwells went into actual possession of the same, but represented to intervener that they were merely occupying a room in the house at the request of Greenleaf; that within thirty days before the filing of her first complaint, intervener "learned that the said V. E. Stockwell carried said residence property in the name of said R. P. Greenleaf for a time, and then had it transferred and carried it in the name of his wife, B. C. Stockwell, reference being made to the files and complaint of B. D. McAlvay for further particulars thereof." This last statement was not, it may be observed, a direct allegation of fact, nor was it even so much as an allegation made upon information and belief.

Intervener in the prayer of her proposed complaint demanded "that said real and personal property be declared to be held in trust for the benefit of the plaintiff and be reconveyed to her." Also that plaintiff recover the said commission of two hundred dollars; and certain moneys paid by her as rent for her occupancy of said property during the pendency of the transaction of exchange; and certain stated moneys claimed, in the nature of damages; and rent claimed from the Stockwells for their occupancy of the property conveyed by intervener since the time of such conveyance; and other relief "as equity may require."

As an action to recover damages for fraud, said complaint would not show a right to intervene. It would not come within the description of any interest which entitles one to intervene in an action between other parties. (Code Civ. Proc., sec. 387.)

As a pleading in a suit in equity, the case stated is not in the nature of an action or suit to enforce a trust, except as facts showing a right to rescind may include some elements of an involuntary trust. The intervener has received and has disposed of the consideration she accepted in return for the property conveyed by her. According to her own statement, the property wrongly obtained from her remains in the possession and control of the Stockwells, and therefore if the facts warranted such relief, a conveyance to intervener could be compelled. But before plaintiff can

obtain relief in equity, she must be ready and willing to do equity by returning or offering to return to the alleged wrongdoer that which she received from him, and must not have placed it beyond her power so to do. (*Lupton* v. *Domestic Utilities Mfg. Co.*, 173 Cal. 415, 422 [160 Pac. 241].)

In view of the conclusions above stated, it becomes unnecessary to discuss the other questions argued by counsel.

The judgment is affirmed.

Houser, J., and York, J., concurred.