[Civ. No. 5457. Third Appellate District.—April 2, 1936.]

LOUIS F. DREISKE, Appellant, v. LOS ANGELES IN-VESTMENT SECURITIES CORPORATION (a Corporation), Respondent.

Howard F. Shepherd and John F. Bender for Appellant.

Flint & MacKay, Wesley L. Nutten, Jr., and Donald W. Hamblin for Respondent.

PULLEN, P. J.—On May 5, 1930, plaintiff became the owner of certain bonds of the Angeles Hospital Association, a corporation, having acquired them for cash from Los Angeles Investment Securities Corporation, respondent herein. ██ During the negotiations for these bonds it was represented to the prospective purchaser that all taxes and municipal assessments had been fully paid. The Hospital Association paid the interest on its bonds until October 1, 1931, at which time it defaulted. Thereupon, plaintiff was requested to join with other bondholders in authorizing the trustee to proceed to foreclose the deed of trust securing the bonds. Plaintiff thereupon executed a bondholders' committee agreement and deposited his bonds with the trustee. In accordance with this agreement the property conveyed to the trustee as security for the bonds was sold yielding an amount far less than the face value of the bonds. Some time in September, 1932, and during the investigation by the bondholders' committee and after the assignment by plaintiff of his bonds to the bondholders' committee, and after the property had been sold, he learned for the first time that when he purchased the bonds the representations then made to him that all of the taxes and municipal assessments levied against the property had been paid, were untrue, and that taxes, penalties and assessments were at that time unpaid and delinquent. He thereupon attempted to rescind his purchase of the bonds and so notified

defendant and offered to assign to defendant all interest he had under the bondholders' agreement and offered to deliver to defendant an order on the bondholders' committee to transfer and convey to defendant all interest, right or title he had in the bonds or the trust indenture or the real property described therein, and in return demanded of defendant that he repay to him all he had paid on account of the purchase price of the bonds.

Upon the trial, based upon this notice of rescission, the court sustained an objection to the introduction of any evidence on the ground the complaint failed to state a cause of action, the plaintiff being unable to allege or prove he could restore the defendant to its *status quo*.

■ Appellant contends that his assignment' to the bondholders' committee was a transfer to an agent rather than an actual sale and that it was not necessary to restore defendant to an exact *status quo* but only to restore everything of value he had received from the seller under the contract. (Sec. 1691, Code Civ. Proc.)

An examination of the bondholders' agreement, however, discloses that the complete and absolute title to the bonds was transferred to the committee with full discretionary power to refinance, effect a compromise, resort to litigation or by any other means to effect an adjustment. That the effect of such an agreement is to convey the absolute title is clearly determined in the case of *Bullard* v. *City of Cisco*, 290 U. S. 179 [54 Sup. Ct. 177, 78 L. Ed. 254, 93 A. L. R. 141], construing a bondholders' agreement almost identical to the one here under examination.

The trial court relied strongly upon the cases of *Kelley* v. *Owens*, 120 Cal. 502 [47 Pac. 369, 52 Pac. 797], and *Taylor* v. *Hammel*, 39 Cal. App. 205 [178 Pac. 547]. In *Kelley* v. *Owens, supra*, plaintiff had conveyed land to Owens in exchange for stock in a manufacturing company. Kelley received the stock and caused a new certificate to be issued to himself. The stock was thereafter sold for unpaid stock assessments. False representations as to the stock were alleged and the trial court rescinded the transaction. Plaintiff did not return the stock but delivered the certificate to the clerk of the court to be thereafter endorsed under the order of court.

Appellant attempts to distinguish this case on the ground no tender of the stock was made to defendant before the filing of the complaint. The Supreme Court commented upon this fact, and said:

"To give notice of the rescission and restore the stock within reasonable time after discovery of the alleged fraud was a plain duty of easy performance. There is no excuse for not doing so averred in the complaint, and no valid excuse shown by the evidence. Moreover, there was no valid offer to restore the stock after suit brought; it was not placed in a position and condition to be taken by appellants. Placing the certificates issued to respondent in the hands of the clerk, without assignment, was of no avail. They were not assigned until immediately before the judgment, ten years after the contract, and nine years after the commencement of the action; the decree does not even attempt to give appellants a money compensation for the stock, although that would have been unwarrantable; because upon rescission a party is entitled to receive back the thing which he gave, and not the mere amount of money which someone else may consider its value,—unless, without the fault of the rescinding party, the thing cannot be restored."

*Taylor* v. *Hammel, supra,* was an action where plaintiffs had received certain washing machines in exchange for real property. Plaintiffs endeavored to rescind, and the court said:

" . . . These articles admittedly possessed some substantial value; yet the plaintiffs made no offer to restore them until more than a year after discovery of the fraud. In fact, they could not restore the title to the 1667 washers, because they had already transferred it to defendant Hellman. Such a situation has been held a complete bar to an action for rescission. (*Bailey* v. *Fox,* 78 Cal. 389, 397 [20 Pac. 868]; *Kelley* v. *Owens,* 120 Cal. 502, 512 [47 Pac. 369, 52 Pac. 797].)"

Certain language is found in the foregoing case which might lend some support to the contention of appellant herein, but that language is applicable to the particular facts in the case wherein it appears that before discovery of fraud plaintiffs were induced by the defendants to transfer the washers to one Hellman who was one of the defendants and an agent of and coconspirator with other defendants. The court held that where the defrauded buyer was persuaded by fraud to part with the property he received, by the very seller who de-

frauded him, the seller is not entitled to set up the inability of the buyer to restore the exact *status quo*. No such situation exists in this case.

In the case of *Herman* v. *Haffenegger,* 54 Cal. 161, plaintiff instituted an action to rescind a contract made with defendant on the ground of fraudulent representations and to compel defendant to reconvey certain real property which plaintiff had conveyed to him. At the trial it appeared that plaintiff had sold a certain interest in the real property received from defendant and certain shares of stock to another party. Plaintiff testified that he could have procured the return of the interest and the shares at any time, but preferred not to trouble the third parties until the offer of rescission had been accepted. The court held that inasmuch as the plaintiff did not own what he had received he could not maintain the action until he had returned or offered to return all that he has so received. A nonsuit therein granted was held to be proper.

In *Bailey* v. *Fox,* 78 Cal. 389 [20 Pac. 868], plaintiff sought to rescind a contract for the purchase of one-third interest in a stock of hardware and agricultural implements on the ground of fraud. The Supreme Court reversed the judgment in favor of plaintiff, and said:

"The tender made was not of the goods purchased, as a great part of them had been sold. The offer was to deliver the goods on hand, and pay the amount realized from the sale of those disposed of. This was not sufficient. Upon a rescission, the defendant, before paying back the purchase money and delivering up the notes, was entitled to receive the identical things sold. He was not bound to take the price at which they were sold. That might, so far as we know, have been less than their value."

In support of the same general principle is the case of *Stockwell* v. *McAlvay,* 97 Cal. App. 609 [275 Pac. 960], and *Lupton* v. *Domestic Utilities Mfg. Co.,* 173 Cal. 415 [160 Pac. 241].

Appellant attempts to distinguish certain of these cases, claiming that where a person desiring to rescind has voluntarily placed himself in the position where he could not restore, if in a different position than one who has been forced to do so by reason of circumstances under which he found himself, but there is nothing before us which in any manner seems to affect the uncontrolled choice of appellant between deposit-

ing and not depositing his bonds with the committee; it was purely a voluntary act upon his part.

For the foregoing reasons we are of the opinion the judgment of dismissal on the ground that the complaint failed to constitute a cause of action was correct. The judgment is affirmed.

Thompson, J., concurred.